Rosemary MOORE, Individually and on Behalf of the Estate of Heather Moore, Deceased, Appellant,

v.

Mark E. SUTHERLAND, M.D., and Collom & Carney Clinic Association, Appellees.

No. 06–02–00014–CV.

Court of Appeals of Texas, Texarkana.

Submitted April 16, 2003.

Decided May 22, 2003.

M. Mark Lesher, Monty G. Murry, Lesher & Murry, Texarkana, for appellant.

Jeffery C. Lewis, Alan Harrel, Atchley, Russell, Waldrop & Hlavinka, LLP, William C. Gooding, Gooding & Dodson, Texarkana, for appellees.

Before ROSS, CARTER and CORNELIUS,* JJ.

OPINION

Opinion by Justice CORNELIUS (Retired).

Rosemary Moore, Individually and on behalf of the Estate of Heather Moore, deceased, appeals from the dismissal of her medical malpractice suit against Mark E. Sutherland, M.D. and Collom & Carney Clinic Association (the Clinic). In two points of error, Moore contends that the trial court abused its discretion: (1) by dismissing her claim for failing to file an expert report complying with the requirements of Tex.Rev.Civ. Stat. Ann art. 4590i, § 13.01 (Vernon Supp.2003); and (2) by denying her request for a thirty-day extension to file a new report.

On March 3, 2000, Moore filed suit against Sutherland and the Clinic, alleging medical negligence. She alleged that, on March 5, 1998, Heather Moore was admitted to St. Michael Hospital for a gastric ulcer and reflux diagnosis. On that same date, Sutherland, a physician at the Clinic, performed an operation called "vagotomy and antrectomy." Moore was discharged from the hospital on March 13 and died on March 16 from "bile peritonitis and small bowel volvulus due to ruptured common bile duct."

Rosemary Moore, the daughter of Heather Moore, timely filed her expert report in letter form. The letter is dated May 2, 2000, from Brent H. Miedema, M.D., F.A.C.S. On August 24, 2001, Sutherland and the Clinic moved to strike the expert report and dismiss Moore's suit because the report failed to represent a good faith effort to comply with the statutory requirements of an expert report. On October 11, 2001, the trial court found that: (1) plaintiff's expert report failed to comply with Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(d); and (2) such failure was

* William J. Cornelius, Chief Justice, Retired, Sitting by Assignment

not the result of an accident or mistake. *In re Collom & Carney Clinic Ass'n,* 62 S.W.3d 924, 927 (Tex.App.-Texarkana 2001, orig. proceeding). Moore now appeals.

Moore first contends that the trial court erred by dismissing her suit pursuant to Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01. Dismissal of a cause of action under Article 4590i, Section 13.01 is treated as a sanction and is reviewed for an abuse of discretion. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 877 (Tex.2001). An abuse of discretion occurs when a trial court acts in an arbitrary or unreasonable manner or without reference to any guiding principles. *See Garcia v. Martinez,* 988 S.W.2d 219, 222 (Tex.1999). A trial court does not abuse its discretion simply because it may decide a matter within its discretion differently than an appellate court. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 242 (Tex.1985). However, a trial court has no discretion in determining what the law is or in applying the law to the facts. Thus, "a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion." *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992).

Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(d) requires a plaintiff asserting a healthcare liability claim to submit an expert report, along with the expert's curriculum vitae, as to each physician or healthcare provider named as a defendant in the suit, no later than the 180th day after filing suit. *See* Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(d). The Act describes an expert report as a written report providing "a fair summary of the expert's opinions ... regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." Tex.Rev. Civ. Stat. Ann. art. 4590i, § 13.01(r)(6).

If a claimant furnishes a report within the time permitted, a defendant may file a motion challenging the report. *See* Tex. Rev.Civ. Stat. Ann. art. 4590i, § 13.01(*l*). The trial court shall grant the motion only if it appears to the court, after hearing, that the report does not represent a good faith effort to comply with the statutory definition of an expert report. *See* Tex. Rev.Civ. Stat. Ann. art. 4590i, § 13.01(*l*); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d at 877–78.

If a report omits any of the statutory elements, it cannot be a good faith effort. *Id.* at 879. A report that merely states the expert's conclusions about the standard of care, breach, and causation is not sufficient. *Id.* In determining whether the report represents a good faith effort, the trial court's inquiry is limited to the four corners of the report. Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(r)(6); *Palacios,* 46 S.W.3d at 878.

The expert report must set forth an applicable standard of care and a breach of that standard. Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(r)(6). The standard of care for a physician is what an ordinarily prudent physician would do under the same or similar circumstances. *Palacios,* 46 S.W.3d at 880. Identifying the standard of care is critical: whether a defendant breached his duty to a patient cannot be determined absent specific information about what the defendant should have done differently. *Id.* "While a 'fair summary' is something less than a full statement of the applicable standard of care and how it was breached, a fair summary must set out what care was expected, but not given." *Id.*

The expert's report must also contain information on causation. It is not enough for a report to contain conclusory insights about the plaintiff's claims. *Bowie Mem'l Hosp. v. Wright,* 79 S.W.3d 48, 52 (Tex.2002). Rather, the expert must explain the basis of the statements and link his conclusions to the facts. *Id.* (citing *Earle v. Ratliff,* 998 S.W.2d 882, 890 (Tex. 1999)).

Moore presented an expert report in letter form from Miedema. Miedema's letter, in pertinent part, states:

> It is my opinion that Dr. Sutherland should have had a high index of suspicion for a bile duct leak due to his dissection in this region. The patient most likely developed her bile duct leak on 3/8/98 when she developed abdominal pain and an increased need for narcotics. Most surgeons would have instituted a diagnostic evaluation to rule out bile peritonitis between 3/9/98 and 3/13/98. Dr. Sutherland's failure to do so was below the standard of care. Had the diagnosis of bile peritonitis been made before discharge from the hospital, treatment would have prevented the patient's death.

To comply with the expert report requirement, the plaintiff must only make a good faith attempt to provide a fair summary of the expert's opinions. TEX. REV.CIV. STAT. ANN. art. 4590i, § 13.01(1); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d at 875. To constitute a good faith effort, the report must discuss the standard of care, breach, and causation with sufficient specificity to inform the defendant of the conduct the plaintiff has called into question, and to provide a basis for the trial court to conclude that the claims have merit. *Id.*

Analyzing Miedema's report, we see that it summarizes his opinions of the standard of care, the breach, and causation in these particulars:

*Standard of Care:*

> Dr. Sutherland should have had a high index of suspicion for a bile duct leak due to his dissection in this region.
>
> ....
>
> Most surgeons would have instituted a diagnostic evaluation to rule out bile peritonitis between 3/9/98 and 3/13/98 [due to her developed abdominal pain and increased need for narcotics on 3/8/98.] Dr. Sutherland's failure to do so was below the standard of care.

*Breach:*

> Dr. Sutherland's failure to do so [institute a diagnostic evaluation to rule out bile peritonitis between 3/9/98 and 3/13/98] was below the standard of care.

*Causation:*

> Had the diagnosis of bile peritonitis been made before discharge from the hospital, treatment would have prevented the patient's death.

We believe the report is a good faith attempt to give a fair summary of the standard of care, Sutherland's breach and the time of his breach, and the cause of Moore's death. The magic words are not always used, but magical words are not necessary. *Bowie Mem'l Hosp. v. Wright,* 79 S.W.3d at 53. It is the substance of the opinions, not the technical words used, that constitutes compliance with the statute. The substance of these statements gave fair notice to Sutherland and the Clinic of (1) the standard of care, i.e., what most surgeons would do; (2) what Sutherland did wrong, i.e., the failure to make a diagnostic evaluation for bile peritonitis; and (3) the cause of Moore's death, i.e., the failure to diagnose and treat bile peritonitis.

The expert report need not present evidence as if it were litigating the merits of the case. It may be informal, and the information presented does not need to meet the same requirements as evidence offered in a summary judgment proceeding or in a trial. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d at 879.

Sutherland and the Clinic contend that Miedema's report only states conclusions. We disagree. A statement that most surgeons would have instituted a diagnostic evaluation for bile peritonitis between March 9, 1998 and March 13, 1998, due to Moore's developed abdominal pain and increased need for narcotics and that Sutherland's failure to do so was below that standard of care is not a conclusionary statement. It is an opinion containing specific facts.

Sutherland and the Clinic rely on the *Palacios* and *Wright* cases to support their position that Miedema's report is inadequate. *Bowie Mem'l Hosp. v. Wright,* 79 S.W.3d 48; *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873. But the facts in those two cases are clearly distinguishable from our case. For example, in *Palacios* there was no statement whatsoever in the expert report as to what was the standard of care. There was only a statement that the medical care rendered to Palacios was below the accepted and expected standard of care. There was no statement of what care was expected but not given. Of course, that was insufficient.

In *Wright,* our Supreme Court held that the expert report gave a fair summary of the standard of care and the breach of that standard, but held that the report did not fairly summarize the causation because the statement of causation was conclusionary. The statement of causation was "if the x-rays would have been correctly read and the appropriate medical personnel acted on those findings then Wright would have had the possibility of a better outcome." As noted by the Supreme Court, this statement did not summarize the causal relationship between the hospital's failure to meet the standard of care and the patient's injury because "the report simply opines that Barbara might have had 'the possibility of a better outcome' without explaining how Bowie's conduct caused injury to Barbara."

In our case, Miedema's report charged Sutherland with negligence in failing to diagnose and treat bile peritonitis. His report specifically stated what Sutherland should have done and what happened because he failed to do it. The statement of causation is not a conclusion or a statement of a mere possibility, as in the *Wright* case, but is a positive statement of fact: "Had the diagnosis of bile peritonitis been made before discharge from the hospital, treatment would have prevented the patient's death."

Miedema's report did not charge Sutherland with a negligent or substandard *method* of treatment. Rather, it charged that Sutherland's complete failure to diagnose and complete failure to treat the bile peritonitis were below the standard of care, and that such failures caused Moore's death. We believe this report gives Sutherland and the Clinic fair notice of what Miedema considers the standard of care, how Sutherland breached that standard, and how that breach caused Moore's death.

We also find that the trial court erred in denying Moore's motion for an extension of time under Section 13.01(g) because Moore established that the failure to file a complying report was neither intentional nor the result of conscious indif-

ference, but was the result of an accident or mistake.

We review the trial court's ruling on a motion for extension of time to file a complying report under an abuse of discretion standard. *See Doades v. Syed,* 94 S.W.3d 664, 672 (Tex.App.-San Antonio 2002, no pet.).

Subsection (g) of Article 13.01 states:

> Notwithstanding any other provision of this section, if a claimant has failed to comply with a deadline established by Subsection (d) of this section and after hearing the court finds that the failure of the claimant or the claimant's attorney was not intentional or the result of conscious indifference but was the result of accident or mistake, the court shall grant a grace period of 30 days to permit the claimant to comply with that subsection. A motion by a claimant for relief under this subsection shall be considered timely if it is filed before any hearing on a motion by a defendant under Subsection (e) of this section.

Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(g).

According to the statute's plain language, an extension of time must be granted if the requirements of Section 13.01(g) are met, and if the motion sets forth facts that, if true, would negate intentional or consciously indifferent conduct. *Horsley–Layman v. Angeles,* 968 S.W.2d 533, 536 (Tex.App.-Texarkana 1998, no pet.) (citing *Dir., State Employees Workers' Comp. Div. v. Evans,* 889 S.W.2d 266, 268 (Tex.1994)). Some excuse, but not necessarily a good excuse, is sufficient to warrant an extension of time to file the expert report, so long as the act or omission causing the failure to file the report was, in fact, accidental. *Horsley–Layman v. Angeles,* 968 S.W.2d at 536. With respect to Section 13.01(g), the movant has the burden to show some excuse of accident or mistake to establish that he or she did not act "intentionally" or with "conscious indifference." *Id.; De Leon v. Vela,* 70 S.W.3d 194, 200 (Tex.App.-San Antonio 2001, pet. denied). The trial court abuses its discretion if it dismisses a case when the failure to file the expert report was not intentional or the result of conscious indifference. Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(g); *Landry v. Ringer,* 44 S.W.3d 271, 275 (Tex.App.-Houston [14th Dist.] 2001, no pet.); *Horsley–Layman v. Angeles,* 968 S.W.2d at 536.

Here, Moore included in her written response to the motion to dismiss, a request for an extension of time under subsection (g). In this response, Moore asserted that, if her expert report was inadequate, it was the result of her attorney's mistake in misunderstanding the requirements of the statute. In the hearing on the motion for extension, Moore's attorney elaborated on his mistaken understanding of the statutory requirements, and stated to the trial court that he filed his expert report before the Texas Supreme Court rendered its opinion in the case of *American Transitional Care Centers of Texas, Inc. v. Palacios,* 46 S.W.3d 873, and was therefore unaware of the requirements for expert reports set out in that case. Because of his mistaken belief that the report he filed was sufficient under the law, Moore's counsel urged the trial court to grant him an extension so he could file an adequate report. Aside from Sutherland's and the Clinic's argument that the *Palacios* case did not change the law, they did not controvert Moore's counsel's representations that he was mistaken about the requirements of Tex.Rev.Civ. Stat. Ann art. 4590i, § 13.01, or that his failure to file what they contended was an adequate expert report was not the result of intentional disregard or conscious indifference, but was an accident and mistake.

■ Sutherland and the Clinic contend that Moore's counsel's statements to the trial court at the hearing do not constitute evidence because the statements were not under oath. Normally, an attorney's statements must be under oath to constitute evidence. *Banda v. Garcia,* 955 S.W.2d 270, 272 (Tex.1997). This can be waived, however, by failing to object when the opponent of the evidence knows or should know that an objection should be made. *Id.; Knie v. Piskun,* 23 S.W.3d 455, 463 (Tex.App.-Amarillo 2000, pet. denied). As in *Banda v. Garcia* and *Knie v. Piskun,* the evidentiary nature of Moore's counsel's statements at the hearing was apparent. He was seeking to prove that, if his expert report was inadequate, his act in filing the inadequate report was the result of an accident or mistake, and was not in intentional disregard or conscious indifference of the law. We conclude that Sutherland's and the Clinic's failure to object to counsel's statements waived the oath requirement.

■ As noted earlier, the reason for failing to strictly comply with Section 13.01 need not necessarily be a good excuse; some excuse will suffice so long as the act or omission was, in fact, an accident or mistake. *Landry v. Ringer,* 44 S.W.3d at 275. And even admitted negligence on the part of the party seeking an extension will not defeat his right to such an extension. *Roberts v. Med. City Dallas Hosp., Inc.,* 988 S.W.2d 398, 403 (Tex.App.-Texarkana 1999, pet. denied).

Our courts have ruled that the terms "mistake or accident" and "conscious indifference" should be construed similarly to their application in the default judgment context. *Horsley–Layman v. Angeles,* 968 S.W.2d at 536; *In re Rodriguez,* 99 S.W.3d 825 (Tex.App.-Amarillo 2003, no pet. h.). Various courts, including this one, have held that an attorney's misunderstanding of the requirements of the law or of a specific statute, as well as calendaring errors or faulty office procedures, are sufficient to show mistake or accident and a lack of conscious indifference. *In re Rodriguez,* 99 S.W.3d 825, 826–27; *Knie v. Piskun,* 23 S.W.3d at 462; *Presbyterian Health Care Sys. v. Afangideh,* 993 S.W.2d 319 (Tex.App.-Eastland 1999, pet. denied); *Roberts v. Med. City Dallas Hosp., Inc.,* 988 S.W.2d at 403; *Horsley–Layman v. Angeles,* 968 S.W.2d at 536.

We conclude that Moore's counsel did not act with conscious indifference or intentional disregard, but showed an accident or mistake, and thus was entitled to the thirty-day extension in which to file a proper expert report. We note that, even though the trial court believed Moore had not met the legal requirements of showing accident or mistake, he nevertheless felt that Moore deserved an extension and attempted to grant her one. *See In re Collom & Carney Clinic,* 62 S.W.3d 924 (Tex. App.-Texarkana 2001, orig. proceeding).

For all of the reasons stated, we reverse the judgment and remand the cause to the trial court for further proceedings consistent with this opinion.