Robin Gwynne RUSS, Appellant,

v.

TITUS HOSPITAL DISTRICT, d/b/a Titus Regional Medical Center, Peggy Burge, R.N., Rachel Meyers, R.N., and Dr. Mark E. Quiring, Appellees.

No. 06–03–00032–CV.

Court of Appeals of Texas, Texarkana.

Submitted Jan. 22, 2004.

Decided Feb. 3, 2004.

Paul D. Hoover, Paul D. Hoover & Associates, Texarkana, for appellant.

C. Victor Haley, John L. Price, Fairchild, Price, et al., Nacogdoches, A. Craig Carter, Davis & Davis, PC, Austin, for appellees.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice CARTER.

Robin Gwynne Russ appeals from a judgment dismissing her medical malpractice suit against Titus Hospital District, d/b/a Titus Regional Medical Center (the Hospital); Peggy Burge, R.N.; Rachel Meyers, R.N.; and Dr. Mark E. Quiring (collectively referred to as Appellees). Russ sustained injuries from a fall out of a hospital window. According to her allegations, the fall resulted from negligence of the various procedures employed by the Appellees while Russ was under their care awaiting transfer to a psychiatric hospital. Appellees moved to dismiss the case alleging the expert report was not timely filed and that it did not comply with the statutory requirements for an expert report. The trial court dismissed the suit. We affirm in part, reverse in part, and remand the case to the trial court for further proceedings consistent with this opinion.

Russ raises two issues on appeal. First, she argues the trial court abused its discretion in failing to allow an additional thirty days in which to file an expert report. Second, she contends the trial court erred in granting the motion to dismiss because the report was sufficient under Article 4590i.

On or about December 3, 1999, Russ sustained injuries from a fall out of a window. Russ filed suit against numerous parties, including the Hospital, on November 30, 2001. The petition alleged the Hospital was negligent in its treatment of Russ. Russ failed to file an expert report by May 29, 2002 (180 days after filing suit). On July 1, 2002, Appellees filed a motion to dismiss. On the day of the hearing, July 22, 2002, but before the hearing, Russ filed a motion to extend the deadline until August 15, 2002. The trial court held the hearing, but the record does not contain a ruling on either the motion to dismiss or the motion to extend the deadline. On August 16, 2002, Russ filed a second motion to extend requesting the deadline be extended to August 20, 2002, which was twenty-nine days after the hearing. On August 20, 2002, Russ provided Appellees a copy of the expert report by fax. Appellees filed a motion to exclude Russ' report

due to failure to comply with the deadline and for failure to meet the requirements of the statute. On October 2, 2002, a hearing was held and the trial court dismissed the lawsuit. Russ now appeals.

*Timeliness of Motion to Extend Time*

 In her first point of error, Russ argues the trial court erred in failing to grant an additional thirty days in which to file an expert report. We review the trial court's ruling on a motion for extension of time to file an expert report under an abuse of discretion standard. *See Walker v. Gutierrez,* 111 S.W.3d 56, 62 (Tex.2003). An abuse of discretion occurs when a trial court acts in an arbitrary or unreasonable manner or without reference to any guiding rules or principles. *See Moore v. Sutherland,* 107 S.W.3d 786, 789 (Tex. App.-Texarkana 2003, pet. denied). A trial court will be deemed to have acted arbitrarily and unreasonably if it could have only reached one decision, yet reached a different decision. *Teixeira v. Hall,* 107 S.W.3d 805, 807 (Tex.App.-Texarkana 2003, no pet.). "[A] clear failure by the trial court to ... apply the law correctly will constitute an abuse of discretion, ...." *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992).

 Article 4590i, Section 13.01(d) requires a plaintiff asserting a claim against a healthcare provider or physician to submit an expert report, along with the expert's curriculum vitae, no later than the 180th day after filing suit. *See* Tex.Rev. Civ. Stat. Ann. art. 4590i, § 13.01(d).[1] The Act requires an expert report to provide "a fair summary of the expert's opinions ... regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *See* Tex. Rev.Civ. Stat. Ann. art. 4590i, § 13.01(r)(6) (repealed 2003).

 Article 4590i, Section 13.01 provides two methods by which a claimant can receive an extension to the 180-day deadline. Under Section 13.01(f), "[t]he court may, for good cause shown after motion and hearing, extend any time period specified in Subsection (d) of this section for an additional 30 days. Only one extension may be granted under this subsection." Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(f) (repealed 2003). Section 13.01(f) has been interpreted by this Court to be directory rather than mandatory. *Roberts v. Med. City Dallas Hosp., Inc.,* 988 S.W.2d 398, 402 (Tex.App.-Texarkana 1999, pet. denied). Under the second method, found in Section 13.01(g), if "the court finds that the failure of the claimant or the claimant's attorney was not intentional or the result of conscious indifference but was the result of an accident or mistake, the court shall grant a grace period of 30 days to permit the claimant to comply with that subsection." Section 13.01(g) has been interpreted to be mandatory on a finding that the failure was a result of accident or mistake. *Sutherland,* 107 S.W.3d at 789. An extension under Section 13.01(g) can be obtained for either failure to file a report or for an inadequate report, provided the failure was not intentional or a result of conscious indifference. *In re Morris,* 93 S.W.3d 388, 391 (Tex. App.-Amarillo 2002, no pet.).

1. Tex.Rev.Civ. Stat. Ann art. 4590i, § 13.01, Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws 985–87. This Act was repealed and recodified at Tex. Civ. Prac. & Rem.Code Ann. § 74.351 (Vernon 2004) (effective September 1, 2003). Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 884. This action was filed November 30, 2001, before the new Act's September 1, 2003, effective date.

The Appellees contend the expert report is untimely because the report was not filed within 210 days of the filing of the suit. Russ' first motion for extension of the deadline was filed on July 22, 2002. This motion requested an extension of the deadline until August 15, 2002, and was entitled "MOTION TO EXTEND TIME FOR FILING UNDER 4590(i) SECTION 13.01(F)." An extension under Section 13.01(f) extends the 180–day period described in Section 13.01(d) to 210 days.[2] Although this Court has noted the motion to extend the deadline can be filed at any time, the extension begins running at the end of the original 180–day time period in subsection (d) and lasts until 210 days from the filing of the suit. *See Roberts*, 988 S.W.2d at 402. Under an extension granted pursuant to Section 13.01(f), the expert report would have been required to be furnished to the opposing parties within 210 days of the filing of the suit. If the extension had been requested under Section 13.01(f), the expert report would have been required to be furnished to the Hospital and other defendants by June 28, 2002. The Appellees contend that, because the expert report was not furnished to the opposing parties until August 20, 2002, the expert report was not timely.

Even though the title refers to Section 13.01(f), our conclusion is that the substance of Russ' motion requested the extension under Section 13.01(g). In the motion and at the hearing, the parties recited the standards of Section 13.01(g) instead of Section 13.01(f) to the trial court. In the body of the motion, it is alleged that co-counsel was in trial and that counsel did not realize it was his responsibility to file the expert report. Such a statement is consistent with a showing of accident or mistake. In addition, the body of the motion states, "[t]his motion is timely since filed prior to the hearing on Defendants [sic] motions." This statement asserts the timeliness requirement of Section 13.01(g) rather than Section 13.01(f).

Further, at the hearing on July 22 at which the court considered the first motion to extend, the Hospital and Russ both argued under the standards of Section 13.01(g). Counsel for the Hospital stated:

> I think that the standard is in terms of when a motion like this for an extension is to be granted is when there's a showing of accident or mistake ... I'm not sure that there's any showing of accident or mistake on the part of Mr. Cooksey's part [sic] ... I think they need to show some sort of accident or mistake on Mr. Cooksey's part to justify an extension. . . .

"Accident or mistake" is the standard for a motion under Section 13.01(g), not Section 13.01(f), which requires "good cause." Shortly thereafter, Russ' counsel made the assertion to the trial court that "a motion to extend time is timely filed if it's filed before the time of the hearing on their motion to dismiss." As discussed above, this is the standard for Section 13.01(g) rather than Section 13.01(f). At this point, the trial court inquired if "the statute uses the language 'accident or mistake.' " The Hospital's counsel responded that the statute says there cannot be "conscious indifference," and Russ' counsel agreed. We not that counsel for Dr. Quiring stated the standard was "good cause," which is the standard under Section 13.01(f).

---

2. *Villa v. Hargrove*, 110 S.W.3d 74, 80 (Tex. App.-San Antonio 2003, pet. denied); *Doades v. Syed*, 94 S.W.3d 664, 673 (Tex.App.-San Antonio 2002, no pet.); *Landry v. Ringer*, 44 S.W.3d 271, 274 (Tex.App.-Houston [14th Dist.] 2001, no pet.); *Pfeiffer v. Jacobs*, 29 S.W.3d 193, 195–97 (Tex.App.-Houston [14th Dist.] 2000, pet. denied); *Roberts v. Med. City Dallas Hosp., Inc.*, 988 S.W.2d 398, 402 (Tex. App.-Texarkana 1999, pet. denied).

A motion should be construed by its substance to determine the relief sought, not merely by its form or caption. *See Surgitek, Bristol–Myers Corp. v. Abel,* 997 S.W.2d 598, 601 (Tex.1999). Because the motion contained allegations consistent with showing accident or mistake, contained the time standards for Section 13.01(g)—not Section 13.01(f), and at the hearing, it was primarily treated by counsel and the trial court in terms unique to Section 13 .01(g), we find the motion is one for extension under Section 13.01(g).

The next question is whether the first motion to extend was timely filed.[3] The first motion for extension was filed before the hearing. A motion under Section 13.01(g) "shall be considered timely if it is filed before any hearing on a motion by a defendant under Subsection (e) of this section." TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(g) (repealed 2003). A hearing on the Appellees' motion to dismiss under Section 13.01(e) was held on July 22, 2002. On the day of the hearing, July 22, 2002, but before the hearing, Russ filed the first motion to extend. Therefore, the first motion to extend was timely filed under Section 13.01(g).

Next, we must consider whether Russ demonstrated that she was entitled to an extension. Russ had to prove that the failure "was not intentional or the result of conscious indifference but was the result of an accident or mistake." *See* TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(g) (repealed 2003). During the hearing, Russ' counsel offered to testify. The trial court stated he was "an officer of the court," which

implied there was no need for counsel to take the stand or to be sworn. No objection was made by either defense counsel. Russ' counsel then explained: "we had some confusion about who was to do what, and I think Don was relying on me, and I was relying on Don, . . . ." In essence, counsel informed the court the two attorneys representing Russ erred in their communication as to which one of them had the responsibility to file the report.

We note that these statements were not made under oath. The general rule is that an attorney's statements must be under oath to constitute evidence. *Banda v. Garcia,* 955 S.W.2d 270, 272 (Tex.1997). However, such error is waived by failure to object when the opponent knew or should have known an objection was required. *Id.; Sutherland,* 107 S.W.3d at 793; *Knie v. Piskun,* 23 S.W.3d 455, 463 (Tex.App.-Amarillo 2000, pet. denied). Similar to *Banda, Knie,* and *Sutherland,* the evidentiary nature of the statements was obvious, particularly after the attorney had offered to take the witness stand. We conclude the failure of either defense counsel to object waived the requirement that the statement be made under oath.

Further, the statements are evidence of an accident or mistake. The mistake in this case involved a failure of communication between co-counsel, which resulted in the requirement being inadvertently overlooked. As such, the mistake is a mistake of fact which clearly triggers the extension.[4] As we noted in *Suther-*

3. We note Russ also argues that the second motion made the expert report timely. This motion was clearly filed under Section 13.01(g). However, the second motion was not timely filed because it was not filed before the hearing. The second motion for extension was not filed until August 16, 2002, which was more than two weeks after the hearing.

Therefore, the second motion for extension is not timely and we will not consider it.

4. We note that the Texas Supreme Court has held that not all mistakes of law are mistakes under the statute; specifically, "a purportedly mistaken belief that the report complied with the statute does not negate a finding of 'inten-

*land,* the accident or mistake need not necessarily be a good excuse, provided the act or omission was, in fact, an accident or mistake. *Sutherland,* 107 S.W.3d at 792. If the failure to file a report resulted from an accident or mistake, even negligence does not defeat a right to an extension. *See id.; Roberts,* 988 S.W.2d at 403.

■ Russ' counsel offered uncontroverted evidence that he did not act with conscious indifference or intentional disregard and that the failure resulted from an accident or mistake. Testimony by an interested witness may establish a fact as a matter of law if the testimony could be readily contradicted if untrue, and is clear, direct and positive, and there are no circumstances tending to discredit or impeach it. *Lofton v. Tex. Brine Corp.,* 777 S.W.2d 384, 386 (Tex.1989). Since the evidence was uncontroverted, the trial court abused its discretion in not making a finding of accident or mistake.

■ The final issue under Russ' first point of error is whether the expert report was timely provided to the opposing parties under Section 13.01(g). Section 13.01(g) provides a thirty-day "floating window," which begins to run on a finding of accident or mistake.[5] Because the extension is mandatory once it is established that the failure was not due to intentional or conscious indifference but rather an accident or mistake, the trial court must grant a thirty-day extension. *Hanzi v. Bailey,* 48 S.W.3d 259, 264 (Tex.App.-San Antonio 2001, pet. denied). Therefore, Russ should have received a thirty-day extension starting on July 22. Since the

report was provided to the opposing parties on August 20, the expert report was timely within the thirty-day window.

When presented with uncontroverted evidence, the trial court should have found that the failure was not intentional or the result of conscious indifference, but rather due to accident or mistake. The motion was filed timely, and the expert report was timely provided to the opposing parties.

*Adequacy of Medical Report*

■ In her second point of error, Russ contends the trial court erred in dismissing the suit. Dismissal under Article 4590i, Section 13.01(e) is treated as a sanction and is reviewed for an abuse of discretion. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 877 (Tex. 2001).

■ If a claimant furnishes a report within the time permitted, a defendant may file a motion challenging the report. *See* TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(*l*) (repealed 2003). The trial court shall grant the motion only if it appears to the court, after hearing, that the report does not represent a good-faith effort to comply with the statutory definition of an expert report. *See* TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(*l*); *Palacios,* 46 S.W.3d at 877–78. In determining whether the report represents a good-faith effort, the trial court's inquiry is limited to the four corners of the report. TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(r)(6); *Palacios,* 46 S.W.3d at 878.

■ Although the trial court stated as its reason for dismissing the lawsuit the

---

tional or conscious indifference.' " *Walker v. Gutierrez,* 111 S.W.3d 56, 62 (Tex.2003).

5. *See Salazar v. Canales,* 85 S.W.3d 859, 865 (Tex.App.-Corpus Christi 2002, no pet.); *Whitworth v. Blumenthal,* 59 S.W.3d 393, 399 (Tex.App.-Dallas 2001, pet. dism'd by agr.);

*Hanzi v. Bailey,* 48 S.W.3d 259, 264 (Tex. App.-San Antonio 2001, pet. denied); *Broom v. MacMaster,* 992 S.W.2d 659, 663 (Tex.App.-Dallas 1999, no pet.); *cf. Horsley–Layman v. Angeles,* 968 S.W.2d 533, 536 (Tex.App.-Texarkana 1998, no pet.).

failure to meet "the 25 day extension,"[6] the order granting the dismissal did not specify a reason. A trial court cannot abuse its discretion if it reaches the right result, even for the wrong reason. *See In re Acevedo,* 956 S.W.2d 770, 775 (Tex.App.-San Antonio 1997, no pet.); *Hawthorne v. Guenther,* 917 S.W.2d 924, 931 (Tex.App.-Beaumont 1996, writ denied); *Luxenberg v. Marshall,* 835 S.W.2d 136, 141–42 (Tex. App.-Dallas 1992, no writ). Therefore, we must consider whether the suit should have been dismissed under the Appellees' alternative argument that the expert report was inadequate.

■■■ Omission of any of the statutory elements prevents the report from being a good-faith effort. *Palacios,* 46 S.W.3d at 879. A report that merely states the expert's conclusions about the standard of care, breach, and causation does not meet the statutory requirements. *Id.* These three separate requirements must all be present and described with sufficient specificity.

■■■ The expert report must set forth an applicable standard of care. TEX. REV.CIV. STAT. ANN. art. 4590i, § 13.01(r)(6). The standard of care for a physician is what an ordinarily prudent physician would do under the same or similar circumstances. *Palacios,* 46 S.W.3d at 880. Identifying the standard of care is critical: "[w]hether a defendant breached his ... duty to a patient cannot be determined absent specific information about what the defendant should have done differently." *Id.* "While a 'fair summary' is something less than a full statement of the applicable standard of care and how it was breached, a fair summary must set out what care was expected, but not given." *Id.* In other words, the report must specify what the defendant should have done.

Second, the expert report must indicate how the defendant breached the standard of care. The report must indicate what actions taken by the defendant deviated from the standard of care. It must be a "fair summary" of the care which was expected, but not given. *Id.*

■■■ The expert's report must also contain information on causation. It is not enough for a report to contain conclusory insights about the plaintiff's claims. *Bowie Mem'l Hosp. v. Wright,* 79 S.W.3d 48, 52 (Tex.2002); *Sutherland,* 107 S.W.3d at 790. Rather, the expert must explain the bases of the statements and link his or her conclusions to the facts. *Id.*

Russ presented an expert report in letter form from Mitchell H. Dunn, M.D. The report, in its entirety, states as follows:

It is my opinion, held to a reasonable degree of medical probability, that there were several deviations from the standard of care that directly contributed to the injuries sustained by Robin Russ on the evening of December 3, 1999.

Dr. Quiring deviated from the standard of care by failing to fully evaluate Ms. Russ' suicidal ideation and plans, and failing to inquire about the reason for her excessive serum Dilantin level. There is no evidence that he ever performed a mental status examination. It is evident that he believed the overdose was purposeful as his progress note read "Attention getting ? v. suicidal attempts." Also, it is clear that Ms. Russ was being held in the hospital awaiting transfer to a psychiatric hospital, indicating that she required further care in a psychiatric hospital setting. Dr. Quiring was aware of this and should have been aware of the MHMR representative's concern that "client may try sui-

6. Russ' original motion requested a twenty-five-day extension.

cide again." He further deviated from the standard of care by failing to order one-to-one observation of Ms. Russ. Her numerous episodes of attempting to get out of bed unsupervised, her very unsteady gait, and her history of impulsive, potentially life-threatening behaviors necessitated either one-to-one observation or restraints that were escape-proof. Either one of these interventions would have prevented Ms. Russ' injuries.

The hospital deviated from the standard of care by placing a patient with potential suicidal ideation and recent suicidal behavior in a fourth floor room with unlocked windows. It is the standard of care that windows either be secured with metal screens that only staff can open, or be locked. If the patient has access to the window, a special difficult to break glass or Plexiglass should be used. It is simply unacceptable that patients of that type could have access to an open window. Obviously, if there was no access to an open window, Ms. Russ' injuries would not have occurred. The nursing staff at Titus Regional Medical Center also deviated from the standard of care by failing to pass on critical information regarding Ms. Russ' ICU behavior, including the fact that her dilantin toxicity was purposeful, her degree of agitation, her multiple attempts to get out of bed unsupervised, and her need for one-to-one supervision. Then, even after witnessing her agitation, her unsteady gait, and the fact that "Patient almost went over other side of bed head first," the nurses on the med.-surg. floor failed to restrain Ms. Russ or pursue a higher degree of supervision for her. If they had, Ms. Russ' injuries would not have occurred. In addition, the nurses' notes reflect knowledge that Ms. Russ had cigarettes but would not give them up when the staff requested that she do so. If they had obtained a doctor's order to confiscate Ms. Russ' cigarettes, perhaps she would not have tried to go out on the ledge.

The plaintiff must only make a good-faith attempt to provide a fair summary of the expert's opinions in the expert report. TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(*l*); *Palacios*, 46 S.W.3d at 875. A "good-faith" effort requires that the report discuss the standard of care, breach, and causation with sufficient specificity to inform the defendant of the conduct the plaintiff has called into question and to provide a basis for the trial court to conclude that the claims have merit. *Palacios*, 46 S.W.3d at 875. "[T]o avoid dismissal, a plaintiff need not present evidence in the report as if it were actually litigating the merits. The report can be informal in that the information in the report does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial." *Id.* at 879. The expert report is not required to prove the defendant's liability, but rather only provide notice of what conduct forms the bases of the plaintiff's complaints. "To constitute a 'good-faith effort,' the report must provide enough information to fulfill two purposes: (1) it must inform the defendant of the specific conduct the plaintiff has called into question, and (2) it must provide a basis for the trial court to conclude that the claims have merit." *Wright,* 79 S.W.3d at 52 (citing *Palacios,* 46 S.W.3d at 879).

*Palacios* makes it clear that a claimant must present specific evidence in a medical report because "knowing what specific conduct the plaintiff's experts have called into question is critical to both the defendant's ability to prepare for trial and the trial court's ability to evaluate the viability of the plaintiff's claims." *Palacios,* 46 S.W.3d at 877. The Texas Supreme Court stated that "[w]hether a defendant breach-

ed his or her duty to a patient cannot be determined absent specific information about what the defendant should have done differently." *Id.* at 880. In other words, one must be able to determine from the report what the standard of care required to be done. This requires "specific information about what the defendant should have done differently." *Id.* However, the report is not required to use magical words. *Wright,* 79 S.W.3d at 53; *Sutherland,* 107 S.W.3d at 790. It is the substance of the opinions, not the technical words used, that constitutes compliance with the statute. *Sutherland,* 107 S.W.3d at 790.

■ Dr. Dunn's report states his opinions concerning the standard of care, the breach, and causation relating to the Hospital in these particulars:

Standard of Care:

It is the standard of care that windows either be secured with metal screens that only staff can open, or be locked. If the patient has access to the window, a special difficult to break glass or Plexiglass should be used.

Breach:

The hospital deviated from the standard of care by placing a patient with potential suicidal ideation and recent suicidal behavior in a fourth floor room with unlocked windows.

Causation:

Obviously, if there was no access to an open window, Ms. Russ' injuries would not have occurred.

The expert report clearly provides the standard of care for the Hospital. It provides that the standard of care is that the window should have been locked or secured with metal screens. This is a specific allegation which provides the Hospital

with notice of the conduct complained of by Russ. The report then provides that the standard of care was breached by placing a suicidal patient in a fourth floor room with unlocked windows. Again, this statement is specific and informs the Hospital of the conduct of which Russ is complaining. Last, the report states that, if Russ did not have access to an open window, her injuries would not have occurred. It is undisputed that Russ' injuries resulted from falling out of a fourth story window. Obviously, a party cannot fall from a window if one cannot exit through the window. The substance of the report gives fair notice to the Hospital of the negligent conduct on which Russ relies and provides a sufficient basis for the trial court to conclude that the claims have merit.

Dr. Dunn's report states his opinions concerning the standard of care, the breach, and causation relating to Dr. Quiring in these particulars:

Standard of Care:

Her numerous episodes of attempting to get out of bed unsupervised, her very unsteady gait, and her history of impulsive, potentially life-threatening behaviors necessitated either one-to-one observation or restraints that were escape-proof.

Breach:

He further deviated from the standard of care by failing to order one-to-one observation of Ms. Russ.

Causation:

Either one of these interventions [one-to-one observation or escape proof restraints] would have prevented Ms. Russ' injuries.

In contrast to the report in *Palacios,* the expert report here provides the Appellees and the trial court with the specific infor-

mation required. This report states that "[h]er numerous episodes of attempting to get out of bed unsupervised, her very unsteady gait, and her history of impulsive, potentially life-threatening behaviors *necessitated either one-to-one observation or restraints that were escape-proof.*" (Emphasis added.) The term "necessitated" connotes that the actions which follow should have been done and were essential or vital. The expert stated that either one-to-one observation or escape restraints were necessary. It is clear from the report what the expert believes the physician should have done. Based on this information, the physician knew precisely the complained-of failures. Further, the trial court had information on which to evaluate the viability of Russ' claims. When discussing the actions of the physician, and his care to the patient, stating that a course of treatment is "necessitated" establishes the standard of care and complies with the requirements for a medical report.

 Last, our analysis arrives at the conduct of the two remaining nurses, Peggy Burge, R.N., and Rachel Meyers, R.N. The expert report explains in detail the omissions of the nurses which he regarded as a breach of the standard of care. However, the report does not state what conduct was necessary or required and, therefore, gives no assistance to the trial court in attempting to evaluate the conduct of the nurses by the standard of care governing them. A trial court does not abuse its discretion in dismissing a suit in which one is required to infer the standard of care from the allegations in the expert report. *Wright*, 79 S.W.3d at 53. Thus, the trial court did not abuse its discretion in dismissing the suit as to the nurses because the standard of care must be inferred.

The report is a good-faith attempt to give a fair summary of the standard of care, the breach, and the cause of the injuries suffered as a result of that breach concerning the Hospital and Dr. Quiring. Because the report in this case is not conclusory and does not require inferences, the report adequately fulfills the requirements of the statute as it relates to the Hospital and Dr. Quiring.

Last, the Hospital argues in the alternative that the report is inadequate because Dr. Dunn is not a qualified expert and that he did not state whether his standard of care applies to a general hospital. We will briefly address these remaining arguments.

The Hospital contends the expert is not qualified because he has never worked in a general hospital. We disagree. Dr. Dunn meets the definition of an "expert" for the purpose of Section 13.01(r)(5)(A). Tex. Rev.Civ. Stat. Ann. art. 4590i, § 13.01(r)(5)(A) (repealed 2003); *see* Tex. Rev.Civ. Stat. Ann. art. 4590i, § 14.01(a), Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 2, 1995 Tex. Gen. Laws 988, *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 884. Dr. Dunn is a board certified psychiatrist who has served as acting clinical director and medical director of the forensic program of Terrell State Hospital since 1995.

 The Hospital also argues that the expert report fails to specify whether this standard of care applies to a general hospital or simply to a psychiatric hospital. It is apparent that Dr. Dunn knew the Hospital was a general hospital because he stated Russ was awaiting transfer to a psychiatric hospital. "The standard of care for a hospital is what an ordinarily prudent hospital would do under the same or similar circumstances." *Palacios*, 46 S.W.3d at 880. In addition to serving as the medical director of the forensic program at Terrell State Hospital, Dr. Dunn

also has a part-time practice in adult and forensic psychiatry. He has treated many patients with suicidal behavior and has had the responsibility to make decisions to prevent suicidal behavior. We have found that he has expressed the proper standard of medical and hospital care. He has training and experience to allow him to offer such opinions. The requirement of an expert report is to inform the opposing party of Russ' claim and to provide the trial court with a basis to conclude that the claim has merit. The report is not required to litigate the claim. *Id.* at 879. We find Dr. Dunn qualified to render such a medical report.

We have carefully examined the Texas Supreme Court's decisions in *Palacios* and *Wright*, and believe that this case is distinguishable. Unlike the reports examined in *Palacios*, the report in question is not conclusory as it pertains to Dr. Quiring and the Hospital. The report contains specific information which informs the Appellees what Russ is contending they should have done. Further, one is not required to infer a standard of care from mere insights provided by the report. Further, *Palacios's* two-part test to determine "good faith" was met concerning Dr. Quiring and the Hospital. Therefore, the trial court had no discretion to conclude that the report as it pertains to Dr. Quiring and the Hospital was not a good-faith effort.

Accordingly, we affirm the judgment of the trial court concerning Peggy Burge, R.N., and Rachel Meyers, R.N.; we reverse the judgment of the trial court concerning Dr. Quiring and the Hospital, and remand the case to the trial court for further proceedings.