IN THE

TENTH COURT OF
APPEALS




 
 
 
 
 
 
 


 



No. 10-00-00373-CV

 

Marie Langley, Individually

and as Representative 

of the Estate of John Langley

and Mariah Langley, a Minor,

                                                                      Appellant

 v.

 

Floyd E. Jernigan, M.D.,

                                                                      Appellee

 

 

 



From the 19th District Court

McLennan County, Texas

Trial Court # 2000-2532-1

 



MEMORANDUM Opinion AFTER REMAND



 

This medical malpractice case is on
remand from the Texas Supreme Court.  Appellant,
Marie Langley[1]
sued Providence Health
 Center and a group of doctors, including Appellee
Floyd E. Jernigan, after the death of her husband, John Langley.  The trial court dismissed her claims against
Dr. Jernigan under former article 4590i and severed the claims from those
against all other defendants.

Langley brought this appeal,
asserting in four issues why her claims should not have been dismissed: (1) Dr.
Jernigan waited too long to file his motion to dismiss; (2) the expert report
she filed was a “fair summary” of the expert's opinions; (3) the burden of
showing a lack of good faith rested with Dr. Jernigan and he did not meet that
burden; and (4) the court erroneously refused to allow her time to supplement
the reports.  We held that by waiting for
over 600 days Dr. Jernigan waived his right to object to the report.  Langley
v. Jernigan, 76 S.W.3d 752, 758 (Tex. App.—Waco 2002), rev'd, 111 S.W.3d 153 (Tex. 2003). Thus, we reversed the judgment and
remanded the cause for trial.  Id.  The
Supreme Court disagreed with our decision about waiver,[2]
reversed our judgment, and remanded the case to us “for further proceedings.”  Jernigan
v. Langley, 111 S.W.3d 153, 158 (Tex. 2003).  We now consider Langley's issues two, three, and four.

We will sustain Langley’s issues two and three, reverse the dismissal,
and remand for further proceedings. 
Alternatively, we will also sustain issue four, reverse the dismissal,
render judgment that Langley is entitled to an extension of time to file a
supplemental report, and remand for further proceedings.

JOHN'S
DEATH

Early on October 6, 1996, because he was experiencing stomach pain,
Marie took John to the emergency room at Providence Hospital.  An
abdominal x-ray was performed, and John was discharged with a diagnosis of
fecal impaction.  He was given a gallon
of Golytely to drink at home and told to return in the evening.  John and Marie returned less than two hours
later; John was in acute pain.  He was
admitted to the hospital under the care of Dr. John Jones, a medical resident
who was under the supervision of Dr. Jernigan, the attending physician.  John’s condition worsened during the
afternoon.  Early in the evening,
gastroenterology and surgical consults were ordered.  Later that night, surgery was performed, and
a second operation was performed the next day, October 7.  John died on October 8, forty-nine hours after
he first went to Providence.

THE
REPORTS, THE MOTION, THE HEARING

Approximately forty-five days after
filing suit, Marie filed two expert reports—one by Dr. Charles McKhann, a
surgeon, and Dr. Albert Weihl, an emergency-room and family doctor; the other
by Dr. Howard Spiro, a gastroenterologist.  A curriculum vitae for each expert was also
filed.  Prior to her claims being
dismissed, she filed a supplemental report by Dr. McKhann.

Dr. Jernigan's motion to dismiss asserted
that Langley's expert reports did not meet the specificity
requirements of former article 4590i.[3]
 Langley's response, in addition to asserting
untimeliness, asserted that the reports were adequate and alternatively asked
the trial court to consider Dr. McKhann's supplemental report.

On July 28, 2000, the trial court held a hearing, granted Dr.
Jernigan's motion to dismiss, and signed the order dismissing and severing Langley's claims.  At the hearing, Dr. Jernigan's counsel argued,
“We're here because they failed to meet the requirements of what the report
must contain. . . .”  At the conclusion
of the hearing, the trial judge acknowledged that he was dismissing because of
the “inadequacy of the report,” noting the expert reports mentioned Dr.
Jernigan “just in passing.”

APPLICABLE
LAW AND ANALYSIS

Under former article 4590i, the test
was two-pronged.  First, does the report
filed constitute a good-faith effort to comply with the statutory
requirements?  Am. Transitional Care Ctrs. of Tex., Inc.
v. Palacios, 46 S.W.3d 873,
875-79 (Tex. 2001). 
Second, if it does not, under what circumstances may that failure be
deemed the result of an accident or mistake rather than of intentional conduct
or conscious indifference?  Walker v.
Gutierrez, 111 S.W.3d 56, 63-65
(Tex. 2003).

First
Prong: Adequacy of the Reports

Langley's issues were formulated
prior to the Supreme Court's decision in Am.
Transitional Care Ctrs. of Tex., Inc. v. Palacios, and because of that
decision, we will consider her second and third issues together.  Palacios,
46 S.W.3d at 877-78.

Under article 4590i, a timely expert
report could be challenged by a motion to dismiss. Chandler v.
Singh, 129 S.W.3d 184, 187 (Tex. App.—Texarkana 2004, no pet. h.).  The statute directed the trial court to grant
the motion if it appeared, after hearing, that the report did not represent a
good-faith effort to comply with the definition of an expert report. Palacios, 46 S.W.3d at 877-78.  In determining whether the report represented
a good-faith effort, the trial court's inquiry was limited to the four corners
of the report.  See Chandler, 129 S.W.3d at 188 (citing former art. 4590i, §
13.01(r)(6)); see also Palacios, 46
S.W.3d at 878.  We review the court's
decision under that statute by an abuse-of-discretion standard. Palacios, 46 S.W.3d at 877.

The expert report must represent
only a good-faith effort to provide a fair summary of the expert’s
opinions.   Id. at 878. 
The report does not have to marshal all of the plaintiff’s proof, but it
must include the expert’s opinion on each of the statutory elements.   Id. at 878-79. 
The plaintiff also does not have to present evidence in the report as if
it were actually litigating the merits.  Id. at 879. 
A report does not constitute a good-faith effort to comply with the
statutory requirements if it omits any of the statutory elements.  Id.  The
report must address three statutory elements as to each defendant: (1) state an
applicable standard of care, i.e.,
what an ordinarily prudent physician would do under the same or similar
circumstances; (2) indicate how the defendant breached the standard of care by
stating what actions taken or not taken by the defendant deviated from the
standard of care, i.e., a "fair
summary" of the care which was expected, but not given; and (3) contain
information on causation.  See Chandler, 129 S.W.3d at 188.  A "good-faith" effort requires that
the report discuss the standard of care, breach, and causation with sufficient
specificity to inform the defendant of the conduct the plaintiff has called
into question and to provide a basis for the trial court to conclude that the
claims have merit.  Id. (citing Palacios,
46 S.W.3d at 875); see also Raines v.
Stephens, No. 10-04-00137-CV, slip op. at 6, (Tex. App.—Waco February 23, 2005, no pet. h.) (report not adequate).

We have reviewed the expert reports
filed on Langley's behalf, using the standards set out above.  The reports contain all three statutory
elements, inform the defendant of the specific conduct called into question,
and provide a basis for the trial court to conclude that the claims have
merit.  First, the element of standard of
care for all of the doctors,
including Dr. Jernigan, is included in the reports.  The standard of care stated is: “surgical
consultation should have been obtained once the x-rays demonstrated
obstruction.”  Second, the element of
breach of that standard of care by Dr. Jernigan is included.  Dr. Jernigan’s alleged breach was not
ordering the surgical consultation after the case was discussed with him.  This is provided by the statements: “At 4:30 p.m. his case was discussed with Dr. Jernigan and at
4:50
 p.m. a lactulose enema
was ordered.”  It is clear that Dr.
Jernigan did not order a surgery consult at this point, which would be a breach
of his standard of care.  Third, the
element of causation is present in the reports, where the Spiro report states:
“The delay in obtaining that surgical consultation led to the death of the
patient.”  Also, following the paragraph
describing the events of the afternoon and evening that specifically mentions
Dr. Jernigan, the report states that “[i]t is my opinion with a reasonable
degree of medical certainty that he died directly as a result of the actions
taken or not taken above.”  The
McKhann/Weihl report states: “The afternoon was critical in Mr. Langley’s care
because his condition deteriorated rapidly between 6:00 p.m. and 8:30.  It is therefore my opinion
within a reasonable degree of medical certainty, that surgery a few hours
earlier more probably than not would have saved his life.”  These statements in the reports informed Dr.
Jernigan that his specific conduct of not ordering the surgical consultation or
delaying the order of the surgical consultation was being called into question
by Langley.  Thus,
the reports provide a basis for the trial court to conclude that the claims
against Dr. Jernigan have merit.

We find that Langley’s reports were adequate.  We conclude that the trial court did not act
within its discretion in determining from the four corners of the documents
that the experts did not discuss the standard of care, breach, and causation
with sufficient specificity to inform Dr. Jernigan of the conduct being called
into question.  See Palacios, 46 S.W.3d at 878-79.

We sustain issues two and three as
to the adequacy of the reports.  Although
we need not reach issue four, we will discuss it as an alternative holding.

IF
REPORTS NOT ADEQUATE UNDER STATUTE

If Langley’s reports were not “adequate,” the reports
were, at a minimum, a good-faith effort to comply with the statutory
requirements, and they did not omit any statutory elements.  See id.  Thus, in the alternative, we consider Langley’s fourth issue.

Second
Prong: Extension of Time

Langley argues that the court should have allowed her
additional time to file a new or supplemental expert report.  Section 13.01 of former article 4590i provided
two methods by which a claimant could receive an extension to the 180-day
deadline.  Russ v. Titus Hosp. Dist., 128 S.W.3d 332, 336 (Tex. App.—Texarkana
2004, pet. filed).  Under section
13.01(f), "the court may, for good cause shown after motion and hearing,
extend any time period specified in subsection (d) of this section for an
additional 30 days.  Only one extension
may be granted under this subsection."  Id. (citing former art. 4590i, § 13.01(f)).  Under the second method, found in section
13.01(g), if "the court finds that the failure of the claimant or the
claimant's attorney was not intentional or the result of conscious indifference
but was the result of an accident or mistake, the court shall grant a grace
period of 30 days to permit the claimant to comply with that subsection."  See id.
 Section 13.01(g) has been interpreted to
be mandatory on a finding that the failure was a result of accident or mistake.
 Id. (citing Moore
v. Sutherland, 107 S.W.3d 786, 789 (Tex. App.—Texarkana 2003, pet.
denied)).  An extension under section
13.01(g) could be obtained for either failure to file a report or for an
inadequate report, provided the failure was not intentional or a result of
conscious indifference. Id. (citing In
re Morris, 93 S.W.3d 388, 391 (Tex. App.—Amarillo 2002, no pet.)); see also Walker, 111 S.W.3d at 61.

“When a claimant files a report that
omits one or more of section
13.01(r)(6)’s required elements, a purportedly mistaken belief that the report
complied with the statute does not negate a finding of ‘intentional or
conscious indifference’” and “[a]ccordingly, such a mistake is not a mistake of
law that entitles a claimant to a section 13.01(g) grace period.”  Walker, 111 S.W.3d at 65 (emphasis added).

Dr. Jernigan filed a motion to
dismiss due to inadequate expert reports. 
However, having held under the first prong that the reports were adequate
and a good-faith effort and that no statutory elements were omitted, we cannot
apply the “mistake-of-law-matter-of-law holding” in Walker.  See In re
Zimmerman, No. 06-04-00095-CV, 2004 Tex. App. LEXIS 10218, *8-9 (Tex. App.—Texarkana, November
 16, 2004,
no pet. h.) (not released for publication). 
Therefore, the trial court was not required, as a matter of law, to find
that no accident or mistake occurred.  Id.  To determine if
the trial court abused its discretion in denying the request to file a new or
supplemental report under the 30-day grace period, we follow the requisite
abuse of discretion analysis required under Walker:[4]

A trial court abuses its discretion if it acts in an arbitrary or
unreasonable manner without reference to any guiding rules or principles. . . .
When reviewing matters committed to the trial court’s discretion, a court of
appeals may not substitute its own judgment for the trial court’s judgment.

 

Walker, 111 S.W.3d at 63. 
“A trial court’s resolution of a factual issue is arbitrary and
unreasonable if the relator establishes that the trial court could reasonably
have reached only one decision.”  Morrill v. Third Coast Emergency Physicians,
P.A., 32 S.W.3d 324, 327 (Tex. App.—San Antonio 2000, pet. denied) (citing Walker v. Packer, 827 S.W.2d 833, 839-40
(Tex. 1992)).

For mistake of law to negate a
finding of intentional conduct or conscious indifference, entitling the
claimant to a grace period under section 13.01(g), Walker instructs the following:

In determining whether the failure to file adequate reports was
due not to intentional disregard or conscious indifference but to accident or
mistake, we must look to the knowledge and acts of the claimant.  If the factual assertions in the claimant’s
testimony are not controverted by the opposing party, the claimant satisfies
his or her burden if the testimony sets forth facts that, if true, negate
intentional or consciously indifferent conduct by the claimant.  In determining if the claimant’s factual
assertions are controverted, we look to all the evidence in the record.  

 

Walker, 111 S.W.3d at 64. 
Unless the nonmovant specifically controverts the evidence presented by
the movant regarding a mistaken belief, the movant prevails on the issue of
mistake and the statutory provision allowing an extension of time is
satisfied.  Director, State Employees Workers’ Compensation Div. v. Evans, 889
S.W.2d 266, 268 (Tex. 1994).

Langley’s attorney asserts that the alleged failure to
file an “adequate” report was made by accident or mistake in believing that the
report was adequate and that the 30-day grace period should have been granted
by the trial court judge.

The testimony of Marie Langley’s
attorney, Harry Wasoff, stated “that Defendant Jernigan’s name is specifically
included in one of the two reports and that the two reports obviously do
interweave in one to the other” and “[i]t was the opinion of our law firm and
the other attorney at the time who was in the case, Kresch and Kresch, New York attorneys, that these reports were adequate.”  He further states:

My testimony is that it was our opinion as
attorneys that the report was adequate, and failing to have heard anything from
anybody else, we assumed that it was not going to be opposed.  If that was a mistake, it was a mistake in
good faith.  If the report should have
been more specific, we just didn’t know that at the time and we had no inclination
on that basis.  It is our belief that we
exercised good faith and that we exercised due diligence.

 

Wasoff also said that after receiving notice of
this hearing:

I did send off at their request by Fed Ex copies
of some additional medical records they requested, deposition testimony that
had just been taken in like I believe it was April or May of this year that
they wanted to look at.   Subsequently,
Dr. McKhann sent a supplementary report, which is attached to response and
alternative motion for grace period to file.

 

Dr. Jernigan’s attorney did not cross-examine
Wasoff.  Dr. Jernigan’s attorney
proceeded to argue that for each defendant, the statutory elements must be
present, and that section 13.01(g) does not even apply to this case.

The trial court judge ruled as
follows:

Judge: First of all, I’m going to deny the
plaintiff’s request for a 30-day grace period. 
I do not believe that Subsection (g) applies - - 13.01(g) applies, but
even if it does, I think, Mr. Wasoff, you’ve probably met one prong of the
requirement under 13.01(g), the filing for the grace period prior to the
hearing on the defense’s motion to dismiss, but I don’t think you’ve met the
other prong, showing that it was not an accident - -  that the failure to file the report or a more
complete record was due to accident or mistake, particularly in light of the
fact that we had a hearing - - when? How many weeks ago was it that we had one
on Dr. Carpenter?

 

Mr. Moody: About seven.

 

Judge: Six or seven weeks ago on virtually the
same fact situation.  As I say, I don’t
think Subsection (g) applies anyway.  So
I’m going grant the defense’s motion to dismiss under 13.01 for the inadequacy
of the report that was filed.

 

We believe that section 13.01(g)
does apply, and this situation is different from the dismissal of Langley’s claims against Dr. Carpenter.  According to the four corners of the expert
reports, Dr. Carpenter was the gastroenterologist who was called five minutes
before the surgeons were called.  Dr.
Carpenter arrived 25 minutes after he was called.  Since the surgeons had already been called,
it is clear that the claims against Dr. Carpenter did not have merit because he
did not participate in the delay of obtaining a surgical consultation, i.e., did not breach his standard of
care.

The record is devoid of any evidence
by Dr. Jernigan that would controvert Langley’s mistaken belief that the reports were adequate
or made in good faith.  Accordingly, Langley’s uncontroverted evidence that the reports were
adequate and made in good faith is sufficient to show that the alleged failure
to file an “adequate” report was not the result of conscious indifference or
intentional conduct, but a mistake.  See Horsley-Layman v. Angeles, 968
S.W.2d 533, 536 (Tex. App.—Texarkana 1998, pet. denied).  We find the trial court abused its discretion
in not granting Langley’s extension of time to file an “adequate”
report.  See Evans,
889 S.W.2d at 268; Angeles, 968
S.W.2d at 536.

Accordingly, in the alternative, we
sustain Langley’s fourth issue.

RESPONSE
TO DISSENT

We find it necessary to respond to
the dissent with the legislative history of former article 4590i.  The house bill analysis states: 

CSHB 971 is a reasonable compromise that would
help focus judicial resources on legitimate claims while protecting the rights
of plaintiffs to sue when they are injured. . . . Reducing the number of
frivolous lawsuits filed against doctors and other health care professionals
and making the malpractice litigation system more efficient would allow doctors
to spend less time in the courtroom and more time treating patients.

 

House Comm. On Civil
Practices, Bill Analysis, Tex. H.B. 971, 74th Leg., R.S.
(1995).  Thus, the legislative purpose of
former article 4590i is to curtail frivolous lawsuits against physicians and
other health care providers.  After
reviewing the four corners of the two expert reports, we believe that the
lawsuit against Dr. Jernigan is not frivolous. 
We are not saying that Dr. Jernigan committed medical malpractice in
this opinion—we are finding that the claims against Dr. Jernigan have merit and
that Langley should be allowed to proceed with her litigation against him.

CONCLUSION

The Supreme Court overruled Langley's first issue.  Having sustained her second and third issues,
we reverse the dismissal of her claims against Dr. Jernigan.  Alternatively, we also sustain her fourth
issue, reverse the dismissal of her claims against Dr. Jernigan, and render an
order that Langley is entitled to the grace period to file a new
or supplemental expert report.  We remand
the cause for further proceedings.

 








BILL VANCE

Justice

 

Before Chief Justice Gray,

Justice Vance, and

Justice Reyna

          (Chief Justice Gray
dissenting)

Reversed and remanded

Opinion delivered and filed March
 2, 2005

[CV06]

 











    [1]       Marie represented herself, the Estate of
John Langley, and Mariah Langley, a minor.





    [2]       As the Supreme Court noted, “The
Legislature recently codified article 4590i and added a deadline to object to
the inadequacy of an expert report. Under the new law, a defendant health care
provider has twenty-one days after being served with the expert report to
object to the report's insufficiency or ‘all objections are waived.’ Act of June 2, 2003, 78th Leg., R.S., H.B. 4, § 10.01 (to be
codified at TEX. CIV. PRAC. & REM. CODE ch. 74).”  Jernigan,
111 S.W.3d at 156 n.1.





    [3]       Article 4590i was amended in 1995 to
include the requirements of an expert report and curriculum vitae. Act of May
18, 1995, 74th Leg., R.S., ch. 140, 1995 Tex. Gen. Laws 985, 986, repealed by
Act of June 11, 2003, 78th Leg., R.S., ch. 204, 2003 Tex. Gen. Laws 847, 884.
Although it has been repealed by the codification, we refer throughout this
opinion to the version in effect at the time Langley's claims were dismissed as “article 4590i.”





    [4]       Langley met the first requirement of section 13.01(g)
by filing her motion for relief under this section before the hearing on Dr.
Jernigan’s motion to dismiss.  See Tex. Rev. Civ. Stat. Ann. art.
4590i, § 13.01(g) (Vernon Supp. 2001).