NO. 07-05-0166-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



APRIL 18, 2006


______________________________



CHRISTY NELSON, Individually and as Representative of the Estate


of CHARLES MICHAEL NELSON, Deceased, LAURA G. NELSON,


LACY G. NELSON, and MICHAEL VINCENT NELSON, 



 Appellants


v.



FRANK M. RYBURN, III, M.D. and JEFFREY NORMAN COLVIN, M.D., 



 Appellees

_________________________________



FROM THE 237TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2003-523,278; HON. SAM MEDINA, PRESIDING


_______________________________



Opinion


_______________________________



Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.

 Appellants Christy Nelson, individually and as representative of the estate of
Charles Michael Nelson, deceased, and Laura G. Nelson, Lacy G. Nelson, and Michael
Vincent Nelson (collectively referred to as the Nelsons) appeal from an order dismissing
their health care liability claims against appellees Frank M. Ryburn, III, M.D. (Ryburn) and
Jeffrey Norman Colvin, M.D. (Colvin). The dismissal arose from the Nelsons' failure to
provide an expert report that met the requirements of the Texas Medical Liability and
Insurance Act. The Nelsons contend that the trial court 1) abused its discretion in
dismissing the lawsuit and 2) erred in failing to grant an additional 30 days in which to file
one or more expert reports. We affirm the order of the trial court.

Background


 Ryburn, an ophthalmologist, performed cataract surgery on Charles Nelson
(Charles) on December 6, 2001. Charles had pulmonary fibrosis as a result of Hodgkin's
disease and used supplemental oxygen. During the surgery, a local anesthesia was
initially administered by Colvin, an anesthesiologist, but it was converted to a general
anesthetic due to the inability of Charles to lie flat. Charles experienced some difficulties
breathing but later recovered sufficiently to be discharged from the hospital. That night he
went into cardiac arrest and died, however. 

 The Nelsons sued both Ryburn and Colvin for medical malpractice and served upon
them expert reports from an ophthalmologist (Matthew B. Goren) and an anesthesiologist
(R. Brian Smith). Both defendants moved to dismiss the lawsuit alleging that the
documents failed to meet statutory requirements respecting the adequacy of a report. The
Nelsons responded to the motions and requested a 30-day grace period to file other
reports if the court determined that the originals were inadequate. Upon hearing the
motions, the trial court granted those of Ryburn and Colvin but denied that of the Nelsons. 
Consequently, the suit was dismissed.


Issue 1 - Good Faith Expert Report


 Initially, the Nelsons contend that the reports were sufficient to meet the statutory
requirements and the trial court abused its discretion in holding otherwise. See Bowie
Memorial Hosp. v. Wright, 79 S.W.3d 48, 53 (Tex. 2002) (stating that a decision regarding
the adequacy of an expert report is reviewed under the standard of abused discretion). We
overrule the issue.

 Applicable Law

 One suing for medical malpractice must:

 [n]ot later than the later of the 180th day after the day on which a health
careliability claim is filed or the last day of any extended period . . . (1) furnish
to counsel for each physician . . . one or more expert reports, with a
curriculum vitae of each expert listed in the report; or (2) voluntarily nonsuit
the action against the physician . . . . 

 Tex. Civ. Prac. & Rem. Code Ann. art. §13.01(d) (Vernon Supp. 2003). (1) Should the
plaintiff not do so, the trial court must:

 . . . on the motion of the affected physician . . . , enter an order awarding as
sanctions against the claimant or the claimant's attorney: (1) the reasonable
attorney's fees and costs of court incurred by that defendant; (2) the
forfeiture of any cost bond respecting the claimant's claim against that
defendant to the extent necessary to pay the award; and (3) the dismissal of
the action of the claimant against that defendant with prejudice to the claim's
refiling.


Id. §13.01(e); Jernigan v. Langley, 111 S.W.3d 153, 156 (Tex. 2003) (stating that the
cause must be dismissed if the trial court determines that the report does not represent a
good faith effort to comply with the definition of an expert report). However, if a report is
timely filed, the opponent may still challenge its adequacy. 

 Next, to be adequate, the document must be written by an expert and provide a fair
summary of his opinions regarding the applicable standards of care, the manner in which
the care rendered deviated from those standards, and the causal relationship between the
deviation and the injury allegedly suffered. Id. §13.01(r)(6); Chisolm v. Maron, 63 S.W.3d
903, 906 (Tex. App.Amarillo 2001, no pet.). To comply with this mandate, the expert must
do more than merely voice his opinions in the report; instead, he is obligated to inform the
defendant of the specific conduct called into question and provide a basis for the trial court
to conclude that the claims have merit. American Transitional Care Ctrs. of Tex., Inc. v.
Palacios, 46 S.W.3d 873, 879 (Tex. 2001); Chisholm v. Maron, 63 S.W.3d at 906. Though
this does not require the claimant to marshal all of his evidence, Rittmer v. Garza, 65
S.W.3d 718, 723 (Tex. App.-Houston [1st Dist.] 2001, no pet.), more than mere
conclusions about the standard of care, its breach, and causation must be stated. 
American Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d at 879. As noted by
our Supreme Court in Bowie Memorial, some explanation accompanying the expert's
utterances is required. Bowie Memorial Hosp. v. Wright, 79 S.W.3d at 53. Finally, in
assessing the adequacy of the document, one can look no further than to its four corners. 
Bowie Memorial Hospital v. Wright, 79 S.W.3d at 52; American Transitional Care Ctrs. of
Tex., Inc. v. Palacios, 46 S.W.3d at 878. 

 Application of the Law

 As previously mentioned, the Nelsons tendered two expert reports purportedly
satisfying the requirements of §13.01(d). Through them, Goren and Smith accused Ryburn
and Colvin of failing to perform an adequate pre-operative evaluation and assessment to
determine if Charles was in good enough health to withstand the effects of the anesthesia
and operation. Furthermore, Goren opined that, "[a]s a direct result of performing this
elective surgical procedure on Mr. Nelson's right eye under general anesthesia, in the
absence of a proper pre-operative medical evaluation, Mr. Nelson lost his life." Similarly,
Dr. Smith concluded that "the anesthetic and surgery were the proximate cause of the
death of Mr. Charles Michael Nelson." 

 Assuming arguendo that an anesthesiologist is qualified to opine on the standards
of care applicable to an ophthalmologist and vice versa, the trial court had basis upon
which to exercise its considered discretion and hold that the reports were deficient. Again,
they cannot be conclusory. Bowie Memorial Hosp. v. Wright, supra. And, while they need
only be a summary (as opposed to a marshaling of evidence), they must still contain some
explanation sufficient to permit the trial court to assess whether the claim has a semblance
of merit. Id. Here, merely concluding that 1) the failure to perform a pre-operative medical
evaluation or 2) the anesthetic and surgery were the proximate cause of death falls short
of that mark. Nowhere do either Smith and Goren explain (through summary or otherwise)
how those purported defaults caused Charles' death. The experts simply said they did. 

 Similarly absent is adequate explanation regarding the manner in which Ryburn and
Colvin purportedly breached the standard of care, assuming of course the experts
adequately opined on the relevant standard. While Dr. Smith suggested that a "CBC,"
blood gas analysis, pulmonary function test, x-ray, and EKG should have been performed,
he failed to discussed what those tests would have uncovered and, whether in light of their
results, surgery with a general anesthetic should or should not have been performed. (2) Nor
did either expert offer any explanation as to why, under the circumstances present here,
the use of a general anesthetic resulted in cardiac arrest sometime after the surgery. 
Given these deficiencies, the reports were less than the fair summary required by statute. 
See Gonzales v. Graves, No. 07-03-0268-CV, 2004 Tex. App. Lexis 2403 at *13 (Tex.
App.-Amarillo March 16, 2004, no pet.) (holding that it is not enough to state that the
failure to diagnose pneumonia was the proximate cause of death). 

 Nelson cites us to several cases which purportedly contain statements of proximate
cause that are similar to that before us. (3) The difference between them and the situation
before us, however, is that the experts there either linked their conclusions to the facts of
the case or it was obvious from the attendant circumstances how the deficient act or
omission resulted in the injury. As previously illustrated, that is missing here. 

 Simply put, the Nelsons did not comply with art. 4590i, §13.01(d) of the Texas
Revised Civil Statutes. Thus, the trial court did not abuse its discretion in dismissing the
lawsuit.

Issue 2 - Grace Period
 

 The Nelsons next argue that the trial court erred by refusing to grant them 30 days
in which to proffer adequate reports. We overrule the issue.

 Article 4590i, §13.01(g) of the Revised Civil Statutes provides:

 Notwithstanding any other provision of this section, if a claimant has failed
to comply with a deadline established by Subsection (d) of this section and
after hearing the court finds that the failure of the claimant or claimant's
attorney was not intentional or the result of conscious indifference but was
the result of an accident or mistake, the court shall grant a grace period of
30 days to permit the claimant to comply with that subsection . . . . 


The Nelsons' attorney testified at the hearing that he believed the reports contained a fair
summary of the standard of care, its breach, and causation. So too did he utter that if he
was mistaken, then his mistake was not the result of conscious indifference or intentional
disregard of the statute. Yet, our Supreme Court has held that "a purportedly mistaken
belief that the report complied with the statute does not negate a finding of 'intentional or
conscious indifference.'" Walker v. Gutierrez, 111 S.W.3d 56, 65 (Tex. 2003); see also
Kirksey v. Marupudi, No. 07-03-0076-CV, 2003 Tex. App. Lexis 10852 at *10 (Tex.
App.-Amarillo December 30, 2003, no pet.). Nor does it entitle the claimant to a grace
period. Id. Therefore, the trial court again did not abuse its discretion in denying the
Nelsons' request. Having overruled each issue, we affirm the order of dismissal.


 Brian Quinn

 Chief Justice
1. As of September 1, 2003, the provision is now found at §73.351 of the Civil Practice and Remedies
Code. Furthermore, the claimant no longer has 180 days to serve the report but only 120. Tex. Civ. Prac.
& Rem. Code Ann. §74.351(a) (Vernon Supp. 2005). However, because the lawsuit was filed before
September 1, 2003, we cite to the old statute.
2. Dr. Smith also states that both doctors erred in discharging the patient with an oxygen saturation of
90-93% while on supplemental oxygen but does not opine that this was a proximate cause of his death. He
merely states that the "anesthetic and surgery" were the proximate cause of death. 
3. Petrus-Bradshaw v. Dulemba, 158 S.W.3d 630, 634 (Tex. App.-Fort Worth 2005, pet. denied)
(performance of a hysterectomy by the surgical method was a direct and proximate cause of the lacerated
ureter and the need for additional surgery); Russ v. Titus Hospital District, 128 S.W.3d 332, 342 (Tex. App.-
Texarkana 2004, pet. denied) (sufficient one-to-one observation or escape proof restraints would have
prevented a fall out of a hospital window); Estate of Birdwell v.Texarkana Memorial Hospital, Inc., 122 S.W.3d
473, 479 (Tex. App.-Texarkana 2003, pet. denied) (additional measures, i.e. restraints, should have been
taken to prevent a fall which resulted in intracranial hemorrhages and paralysis).