Affirmed and Memorandum Opinion filed May 30, 2006









Affirmed and Memorandum Opinion filed May 30, 2006.

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-01029-CV

____________

 

TERRI M. NORRIS, Appellant

 

V.

 

TENET HOUSTON HEALTH SYSTEM

A/K/A HOUSTON
NORTHWEST MEDICAL CENTER 

D/B/A HOUSTON
NORTHWEST PARTNERS, LTD.; 

JOHN WILLIAMS, D.O.;
KAREN MORGAN, R.N.; NORMA WHEELER, L.V.N.; AND VIRGINIA DAVIS, L.V.N., Appellees

 



 

On Appeal from the 133rd District Court

Harris County, Texas

Trial Court Cause No. 02-58071

 



 

M E M O R A N D U M   O
P I N I O N








In this medical malpractice case, we review the trial court=s orders dismissing the plaintiff=s claims against four individual
defendants for alleged deficiencies in the plaintiff=s expert report and the trial court=s grant of summary judgment in favor
of the sole institutional defendant. 
Because the trial court could have reasonably determined that the
plaintiff=s expert report did not represent a
good‑faith effort to comply with statutory requirements, we affirm its
orders of dismissal.  Further, because
the plaintiff failed to comply with requirements governing her response to the
institutional defendant=s motion for summary judgment, we affirm the trial court=s order granting summary judgment.

I. 
Factual and Procedural Background

Appellant Terri Norris alleges she was injured by a narcotic
overdose following surgery.  She filed
suit against physician John Williams, nurses Karen Morgan, Norma Wheeler, and
Virginia Davis (collectively Athe Nurses@), and Tenet Houston Health System (ATenet@).[1]  On November 7, 2000, Norris entered Northwest
Memorial Medical Center and underwent a laparoscope-assisted vaginal
hysterectomy which was performed by Dr. Williams.   In order to manage Norris=s post-operative pain, Dr. Williams
prescribed Oxycontin and certain other drugs. 
Norris contends the Nurses administered the Oxycontin without detecting
its negative effects and, as a result, she suffered a severe reaction to the
Oxycontin and had to be resuscitated.

Pursuant to the former Medical Liability and Insurance
Improvement Act (MLIIA),[2]
Norris filed a report by her expert, Dr. Gerald L. Bullock, within 180 days of
filing suit.  The expert report purported
to show that each of the defendants had breached the standard of care owed to
Norris, causing her to sustain damages. The Nurses moved to dismiss the claims
against them on the grounds that Dr. Bullock=s report failed to comply with
section 13.01 of the MLIIA because it did not identify any of the Nurses by
name.  Norris filed a response to the
motion at 3:23 a.m. on the motion=s submission date.  Later that day, the court granted








the Nurses= motion to dismiss, reciting in its order that Norris had
failed to respond.  Dr. Williams filed a
separate motion to dismiss the claims against him on the grounds that the
expert report failed to comply with sections 13.01 and 14.01 of the MLIIA.  The trial court dismissed these claims as
well, again noting that Norris failed to respond.[3]  The trial court did not state in either of
its dismissal orders whether it granted the motions on the merits or based upon
Norris=s failure to timely respond.

Tenet filed a no-evidence motion for summary judgment, and
Norris responded with her own affidavit, affidavits from a companion and Dr.
Bullock, as well as her medical records. 
Dr. Bullock=s affidavit was substantially similar to his expert
report.  In its reply, Tenet objected to
Dr. Bullock=s opinions on the ground that he was
not qualified to offer an expert opinion on the administration of Oxycontin and
moved to strike his affidavit.  Without
ruling on Tenet=s motion to strike, the trial court granted summary judgment,
disposing of Norris=s remaining claims.

Norris moved for a new trial, arguing that the trial court
was required by section 13.01(g) of the MLIIA to conduct a hearing before
dismissing her claims against the Nurses and Dr. Williams.  Regarding her claims against Tenet, Norris argued
in her motion for new trial that, to the extent that the motion was based on an
attack on Dr. Bullock=s credentials, the trial court was required to conduct a
hearing on Tenet=s motion for summary judgment.  The trial court denied the motion, and Norris
appeals.

II.  Issues
Presented








In four issues, Norris contends the
trial court: (a) abused its discretion in granting the motions to dismiss of
the Nurses and Dr. Williams for failure to file adequate expert witness
reports, (b) erred in granting Tenet=s no-evidence motion for summary
judgment, (c) abused its discretion in striking the evidence Norris submitted
in response to Tenet=s motion for summary judgment, and (d) abused its discretion
in denying Norris=s motion for new trial. 

III.  Analysis

Because the issues concerning four of
the five appellees turn on the adequacy of Norris=s expert report under the MLIIA, we
begin by reviewing the Act=s requirements.  

A claimant under the MLIIA must provide an expert report to
the defendant health care provider within 180 days of filing suit.[4]  An Aexpert report@ means a written report by an expert
that provides a fair summary of the expert=s opinions regarding applicable
standards of care, the manner in which the care rendered failed to meet those
standards, and the causal relationship between that failure and the damages
claimed.[5]  If a claimant fails to timely provide the
required report, the court must, on the motion of the affected health care
provider, dismiss the claims against that provider with prejudice.[6]  If the claimant timely files a report, the
defendant may challenge the report=s adequacy, and the trial court must
dismiss the claims if the court determines that the report does not represent a
good faith effort to comply with the statute.[7]   We review the trial court=s determination for an abuse of
discretion.  Am. Transitional Care
Ctrs. of Tex. v. Palacios, 46 S.W.3d 873, 878 (Tex. 2001).








A good faith effort to comply with the MLIIA Arequires, as to each defendant,
a fair summary of the expert=s opinions about the applicable standard of care, the manner
in which the care failed to meet that standard, and the causal relationship
between that failure and the claimed injury.@ 
Palacios, 46 S.W.3d at 878 (emphasis added); Horizon/CMS
Healthcare Corp. v. Auld, 34 S.W.3d 887, 905 (Tex. 2000) (same); see
also Rittmer v. Garza, 65 S.W.3d 718, 722B23 (Tex. App.CHouston [14th Dist.] 2001, no pet.)
(finding expert report inadequate on the grounds that it referred to defendants
collectively and did not explain the causal relationship between each defendant=s acts and the plaintiff=s injury).  In determining whether the report represents
a good faith effort to comply with the MLIIA, the court does not look outside
the report because Athe only information relevant to the inquiry is within the
four corners of the document.@  Palacios, 46
S.W.3d at 878.

A report need not marshal the plaintiff=s proof, but it must include the
expert=s opinion on each of the elements
identified in the statute.  Palacios,
46 S.W.3d at 878.  In setting out the
expert=s opinions on each of those elements,
the report must provide enough information to fulfill two purposes.  First, the report must inform the defendant
of the specific conduct the plaintiff has called into question.  Id. at 879.  Second, and equally important, the report
must provide a basis for the trial court to conclude that the claims have
merit.   Id.  A report that omits any statutory requirement
or that merely states the expert=s conclusions about the standard of care,
breach, and causation does not fulfill these two purposes.  Id. 
While a Afair summary@ is something less than a full statement of the applicable
standard of care and how it was breached, it must set out what care was
expected, but not given.  Id. at
880. 

A.        Did the Trial Court Abuse Its Discretion in Dismissing
Norris=s Claims Against Morgan, Wheeler, Davis, and Dr.
Williams?








On appeal, Norris
argues the trial court abused its discretion by dismissing Norris=s claims against the Nurses and Dr.
Wheeler because Dr. Bullock=s expert report met the requirements of the MLIIA.  In addition, Norris argues the trial court
should have conducted a hearing before dismissing her claims.  In the alternative, Norris contends the trial
court abused its discretion by failing to grant Norris an extension of time to
file an amended expert report. 

1.         Dismissal
of Claims Against Nurses Morgan, Wheeler, and Davis

The Nurses filed a motion to dismiss
Norris=s claims on the grounds that Dr.
Bullock=s expert report failed to comply with
the requirements of section 13.01 of the MLIIA. 
Specifically, the Nurses asserted that the report was inadequate because
it did not refer to each nurse by name, instead referring generally to Apersonnel at Houston Northwest
Medical Center,@ Anursing personnel,@ Ahospital nurses,@ and Anurses at Houston Northwest Memorial
Medical Center.@  Norris argues the
expert report need not identify Morgan, Wheeler, and Davis specifically because
their identities can be determined from hospital records and because the nurses
did not deny they were among the Anurses@ to whom the expert report
referred.  We disagree.

a.         Expert
Report Requirements








Section 13.01 expert report
provisions apply to all health care liability claims and require the plaintiff
to satisfy the expert report requirements for Aeach >health care provider= against whom such claim is being
made.@ 
Horizon/CMS Healthcare Corp., 34 S.W.3d at 905 (emphasis added).  An expert report asserting that multiple
defendants are negligent must explain how each defendant specifically breached
the standard and how that breach caused or contributed to the plaintiff=s injury.  Taylor v. Christus Spohn Health Sys. Corp.,
169 S.W.3d 241, 244 (Tex. App.CCorpus Christi 2004, no pet.); Wood v. Tice, 988
S.W.2d 829, 831 (Tex. App.CSan Antonio 1999, pet. denied) (stating, Athe report must specifically refer to
the defendant and discuss how that defendant breached the applicable standard
of care@). 
Collective assertions of negligence against various defendants are
inadequate.  See, e.g., Doades v. Syed,
94 S.W.3d 664, 671B72 (Tex. App.CSan Antonio 2002, no pet.) (finding expert report inadequate
because it failed to set forth the standard of care for each defendant
individually and contained mere conclusions regarding breach and causation); Rittmer,
65 S.W.3d at 722B23  (finding expert
report inadequate because it referred to the defendants collectively and did
not explain the causal relationship between each defendant=s acts and the plaintiff=s injury); Whitworth v. Blumenthal,
59 S.W.3d 393, 396 (Tex. App.CDallas 2001, no pet.) (finding expert report inadequate where
it Adoes not identify any particular
defendant to which it applies and instead generally asserts >the health care providers= failed to meet the standard of
medical care . . . .@); see also Bowie Mem=l Hosp. v. Wright, 79 S.W.3d 48, 53 (Tex. 2002)
(stating, AA conclusory report does not meet the
Act=s requirements . . . .@). 
The expert report must explain the basis of the expert=s statements to link his conclusions
to the facts.  Earle v. Ratliff,
998 S.W.2d 882, 890 (Tex. 1999).  If the
expert report, standing alone, is inadequate, then dismissal is appropriate.[8]  

Norris=s expert report does not identify
Morgan, Wheeler, and Davis or explain how any of Dr. Bullock=s statements applies to them.  As noted, Norris contends that because the
identities of the Nurses are readily ascertainable from the medical records,
they need not be specified in the expert report.  However, neither we nor the trial court may
look outside the expert report to determine its adequacy.  See Palacios, 46 S.W.3d at 878 (ABecause the statute focuses on what
the report discusses, the only information relevant to the inquiry is within
the four corners of the document.@). 
Thus, we conclude the expert report is inadequate as to the Nurses as a
matter of law.

b.         Hearing on
the Motion to Dismiss 








In a sub-issue, Norris argues the
trial court erred by dismissing her claims against the Nurses without first
holding a hearing on the Nurses= motion to dismiss.[9]  We disagree. 
Unless required by the express language or the context of the particular
rule, the term Ahearing@ does not necessarily contemplate either a personal
appearance before the court or an oral presentation to the court.  Martin v. Martin, Martin & Richards,
Inc., 989 S.W.2d 357, 359 (Tex. 1998). 
Specifically, a motion to dismiss pursuant to section 13.01 of the MLIIA
may be decided on written materials alone. 
See Jackson v. Reardon, 14 S.W.3d 816, 819 (Tex. App.CHouston [1st Dist.] 2000, no pet.)
(stating, AArticle 4590i does not expressly
require an oral hearing on a motion to dismiss. 
As a general rule, an adjudication based on written materials alone is
sufficient.@); Mocega v. Urquhart, 79
S.W.3d 61, 64 (Tex. App.CHouston [14th Dist.] 2002, pet. denied) (holding a motion to
dismiss pursuant to article 4590i may be properly Aheard@ by submission).  

Moreover, Norris has cited no
evidence showing that she requested an oral hearing on the motion to dismiss
her claims against the Nurses.  See
Harris (Tex.) Civ. Dist. Ct. Loc. R.
3.3.3 (AMotions may be heard by written
submission.@); Harris
(Tex.) Civ. Dist. Ct. Loc. R. 3.3.4 (ASettings for oral hearings should be
requested from the court clerk.  The
notice of oral hearing shall state the time and date.@). 
Where an oral hearing is neither required nor requested, the trial court
does not abuse its discretion in deciding the motion on written submission.

c.         Extension of Time to File an Adequate Expert Report  

 

Norris next contends that section
13.01(g) of the MLIIA requires the court to conduct a hearing to determine
whether she is entitled to an extension of time to amend her expert report
before dismissing her claims.  Section
13.01(g) states:








Notwithstanding any other provision of this section,
if a claimant has failed to comply with [the expert report deadline] and after
hearing the court finds that the failure of the claimant or the claimant=s attorney was not intentional or the result of
conscious indifference but was the result of an accident or mistake, the court
shall grant a grace period of 30 days to permit the claimant to comply with
that subsection.  A motion by a claimant
for relief under this subsection shall be considered timely if it is filed
before any hearing on a motion [to dismiss for failure to timely provide an
adequate expert report].[10]

Norris filed a response opposing the
Nurses= motion to dismiss at 3:23 a.m. on
the day the motion was set for hearing. 
Although her response to the motion was untimely under the local rules,
a motion for leave to amend her expert report would nevertheless have been
timely had it been filed then.  Compare
Harris (Tex.) Civ. Dist. Ct. Loc. R.
3.3.3  (AResponses shall be filed at least two
working days before the date of submission, except on leave of court.@) with MLIIA section 13.01(g)
(AA motion by a claimant for relief
under this subsection shall be considered timely if it is filed before any
hearing on a motion [to dismiss].@). Norris, however, did not request
an extension of time to amend her expert report.  To the contrary, she argued it was adequate
as submitted.  Under these circumstances,
we cannot say the trial court abused its discretion by failing to grant Norris,
sua sponte, an extension of time to prevent a dismissal that she did not timely
oppose.  Therefore, we hold the trial
court did not abuse its discretion in dismissing Norris=s claims against Morgan, Wheeler, and
Davis.

2.         Dismissal of
Claims Against Dr. Williams








Following the dismissal
of the Nurses, Dr. Williams moved to dismiss Norris=s claims against him on the grounds
that her expert report failed to comply with sections 13.01 and 14.01 of the
MLIIA.[11]  Dr. Williams filed his motion to dismiss on
December 4, 2003, and notified Norris that the motion would be heard by
submission on Monday, December 15, 2003, at 8:00 a.m.  On that day, the trial court granted Dr.
Williams=s motion to dismiss, noting that
Norris had not filed a response.  

On appeal, Norris argues the trial
court abused its discretion in dismissing her claims for failure to satisfy the
MLIIA=s expert report requirements because
Dr. Bullock=s report adequately stated Dr.
Bullock=s qualifications, the standard of
care applicable to Dr. Williams, Dr. Williams=s breach of the standard of care, and
the causal link between the breach and Norris=s damages.  In addition, Norris argues the trial court
abused its discretion by ignoring her opposition to Dr. Williams=s motion to dismiss; by refusing to
consider Norris=s motion for an extension of time to correct any deficiencies
in her expert report; and by failing to conduct an oral hearing on Norris=s motion for an extension of time. 

a.         Dr.
Bullock=s Report

The trial court did not specify the
grounds on which it dismissed Norris=s claims against Dr. Williams.  However, after reviewing Dr. Bullock=s expert report, we conclude the
report does not represent a good faith effort to comply with statutory
requirements.  Specifically, the expert
report fails to adequately state (a) Dr. Bullock=s qualifications, (b) the applicable
standard of care, and (c) causation. 
Each of these defects constitutes an independent ground for dismissing
Norris=s claims against Dr. Williams.

i.          Qualifications








To comply with the
MLIIA, an expert providing opinion testimony regarding a physician=s departure from the standard of care
must show that he or she is a physician who (1) is practicing medicine at
the time such testimony is given or at the time the claim arose, (2) has
knowledge of accepted standards of medical care for the diagnosis, care, or
treatment of the illness, injury, or condition involved in the claim,
and (3) is qualified on the basis of training or experience to offer an expert
opinion regarding those accepted standards of medical care.[12]  The offering party must establish that the
expert has knowledge, skill, experience, training, or education Aregarding the specific issue before
the court which would qualify the expert to give an opinion on that particular
subject.@ 
Broders v. Heise, 924 S.W.2d 148, 153 (Tex. 1996) (emphasis
added).  If the expert is not qualified
to testify under section 14.01(a) of the MLIIA, then the report is
inadequate.  See In re Windisch,
138 S.W.3d 507, 511 (Tex. App.CAmarillo 2004, no pet.). 
AThat the person is so qualified must
appear from the report, with its accompanying curriculum vitae.@ 
Id. 

Although Dr. Bullock is a
board-certified obstetrician-gynecologist, his report fails to demonstrate his
familiarity with the standard of care applicable to Norris=s illness, injury, or condition as
required by section 14.01(a)(2) of the MLIIA. 
Dr. Bullock instead states, AI am familiar with the standard of
care of an obstetrician-gynecologist in the care of women.@ (emphasis added).  But, Norris=s gender is neither the specific
issue before the court, nor is it an illness, injury, or condition.  The expert report does not demonstrate that
Dr. Bullock has knowledge of accepted standards of care for the administration
of Oxycontin, which allegedly caused Norris=s injury, or the condition for which
Oxycontin was prescribed, which was post-operative pain management following a
laparoscope-assisted vaginal hysterectomy. 
Accordingly, we conclude the trial court did not abuse its discretion in
dismissing Norris=s claims against Dr. Williams because Norris=s expert report fails to demonstrate
Dr. Bullock=s familiarity with the applicable
standard of care.

ii.         Standard of Care 

 








We next examine whether
Dr. Bullock=s report adequately explains the
applicable  standard of care.  It is not sufficient for a medical expert to
simply state that he knows the standard of care and then draw a
conclusion.  McIntyre v. Smith, 24
S.W.3d 911, 914B15 (Tex. App.CTexarkana 2000, pet. denied). 
The expert report Amust set out what care was expected, but not given.@ 
Palacios, 46 S.W.3d at 880; see also McIntyre, 24 S.W.3d
at 914B15 (the expert must explicitly state
the standard of care and explain how the defendant=s acts met or failed to meet that
standard).

Dr. Bullock=s report does not explain the
standard of care that Dr. Williams owed to Norris but failed to satisfy.  Dr. Bullock makes conclusory statements about
what Aany physician@ is required to know, but he
never explains what Dr. Williams was required to do.[13]  The report states:

The standard of care of any physician, when prescribing powerful narcotics such as
Oxycontin, requires a knowledge of the recommended dosage,
contraindications, and precautions, at least to the extent that a
life-threatening dosage is not given. 
This standard does not require that a physician know everything there is
to know about a drug.  In cases in which
a physician is not adequately aware of a drug=s dosage and potentials [sic] for
dangerous complications, multiple resources are readily available for
assistance, such as Physician=s Desk Reference and hospital Pharmacists
[sic].  Here, the problems with Oxycontin
which a prescribing physician must know include the following:

 

1.       It is indicated only for pain which is
expected to last more than a few days, i.e., chronic pain.

2.       It is not recommended in the immediate
post-operative period.

3.       Its dose should be reduced to one third,
or one half in the presence of other sedatives such as general anesthesia or
other narcotics.

4.       The normal initial dose (in a patient not
receiving other CNS depressants) for a patient not opioid tolerant should be 10
mg every twelve hours.








(emphasis added).  This general standard of care states only
what Aany physician@ should know about
Oxycontin.  It does not explain how Dr.
Williams should have treated Norris. 
Norris asks us to infer the required standard of care from her expert=s statement of a
general standard of knowledge for any physician; however, a trial court does
not abuse its discretion in dismissing a suit in which one is required to infer
the standard of care from the allegations in the expert report.  See Russ v. Titus Hosp. Dist., 128 S.W.3d
332, 343 (Tex. App.CTexarkana 2004, pet. denied);  see also Strom v. Mem=l Hermann Hosp.
Sys.,
110 S.W.3d 216, 224 (Tex. App.CHouston [1st
Dist.] 2003, pet. denied) (concluding a report that arguably addressed breach
of the standard of care did not address the standard of care itself).  General conclusory statements about the
standard of care applicable to any given case do not comply with section
13.01(r)(6).  See Palacios, 46
S.W.3d at 879. 

The expert report
in this case illustrates why the standard of care applicable to a particular
case cannot be inferred from generalizations. 
For example, the statement that Oxycontin is Anot recommended in
the immediate post-operative period@ is facially
neutral and does not identify the pain relief measures that a reasonable
physician is required to take in a similar case.  Moreover, the statement that the dosage of
Oxycontin should be reduced in the presence of general anesthesia supports an
inference that Oxycontin can be appropriately administered post-operatively in
some cases.  Although Dr. Bullock writes
that Oxycontin is indicated only for pain Aexpected to last
more than a few days, i.e., chronic pain,@ he does not
address the expected duration of Norris=s pain or identify
any medication that Dr. Williams should have prescribed instead of Oxycontin. 








Although the
report states that any physician should know that the Anormal initial
dose@ should be ten
milligrams every twelve hours, the report does not support an inference that a
reasonable obstetrician-gynecologist must prescribe the normal initial dose of
Oxycontin following a laparoscope-assisted vaginal hysterectomy in a patient
with Norris=s medical history.  In fact, the report addresses Norris=s history in a
cursory fashion, and does address whether this was an initial dose for Norris,
or whether she was previously treated with Oxycontin.  Although Dr. Bullock states that there is Ano recorded
history of medication or narcotic abuse,@ he does not
address whether Norris was opioid tolerant or if she had a history of
medication narcotic use for legitimate health reasons that would have created a
tolerance for a normal initial dose of pain medication.  Thus, the report fails to explain the
standard of the care that Dr. Williams was required to render to Norris. 

Hence, we conclude
Dr. Bullock=s report does not represent a good faith
effort to comply with statutory requirements and therefore, the trial court did
not abuse its discretion in dismissing Norris=s claims.

iii.      Causation

Dr. Bullock=s report addresses
causation only in the following statement: 
AIf Dr. John
Williams had prescribed a standard dosage of narcotics to Terri Norris, and had
avoided prescribing multiple different narcotics, she would not have suffered
respiratory arrest and none of the above damages would have occurred.@

This statement is
insufficient to link Norris=s claimed injuries
to a breach of the applicable standard of care. 
Dr. Bullock does not claim that any particular drug, in any dosage or in
any combination, is capable of causing respiratory arrest, progressive memory
loss, or personality changes, all of which are included in the report=s AStatement of
Damages.@  Mere conclusions as to causation are
insufficient as a matter of law.  Palacios,
46 S.W.3d at 879.  

In sum, Norris=s expert report
does not identify (a) Dr. Bullock=s qualifications
to offer the opinions in the report, (b) the applicable standard of care, or
(c) a causal link between Dr. Williams=s alleged breach
of the standard of care and the damages claimed.  Because each of these defects warrants
dismissal, we affirm the trial court=s order dismissing
Norris=s claims against
Dr. Williams.








b.       Norris=s Alleged Response
to Dr. Williams=s Motion to
Dismiss

Although Norris
argues on appeal that the trial court erred in disregarding her response
opposing Dr. Williams=s motion to dismiss, she has not
identified her response in the record or provided any argument or evidence of
the contents of her response.[14]  See Tex.
R. App. P. 38.1(h) (appellant=s argument must
contain appropriate citations to the authorities and record).  Without argument or evidence as to the
contents of Norris=s response, nothing is presented for our
review.  Accordingly, this argument is
waived.  

c.       Extension
of Time to Prepare an Adequate Expert Report

Under the MLIIA, a
claimant may request an extension of time to amend an inadequate expert report.[15]  If, after a hearing, the trial court finds
that the claimant=s failure to timely serve an adequate
expert was not
intentional or the result of conscious indifference but was the result of an
accident or mistake report, the trial court grants a thirty-day extension for
the claimant to amend the expert report.[16]  








Norris contends that she requested an
extension of time to amend her expert report regarding Dr. Williams and claims
the trial court erred by failing to grant a hearing on this motion.[17]  However, there is no indication in the record
that Norris requested a hearing on her motion for an extension of time to amend
her expert report.  Moreover, she does
not argue on appeal that her failure to file an adequate expert report was the
result of accident or mistake, was unintentional, or was not caused by
conscious indifference.  Finally, there
is no evidence that such arguments were presented to the trial court.  Therefore, this issue is waived.[18]             

B.        Did
the Trial Court Err In Granting Summary Judgment in Favor of Tenet?

Norris contends the trial court erred
in granting Tenet=s motion for summary judgment on Norris=s medical malpractice and gross
negligence claims because her response to the motion raised genuine issues of
material fact.  For the following
reasons, we disagree.

A party may move for summary judgment
on the basis that there is no evidence of an essential element of the non‑movant=s cause of action.  Tex.
R. Civ. P. 166a(i).  To defeat a
no‑evidence summary judgment motion, a party must produce more than a
scintilla of probative evidence raising a genuine issue of material fact on the
challenged elements. Lampasas v. Spring Ctr., Inc., 988 S.W.2d 428, 432
(Tex. App.CHouston [14th Dist.] 1999, no
pet.).  We will sustain the trial court=s judgment if (1) there is a complete
absence of proof of a vital fact; (2) rules of law or evidence bar the court
from giving weight to the only evidence offered to prove a vital fact; (3) the
evidence offered to prove a vital fact is no more than a scintilla; or (4) the
evidence conclusively establishes the opposite of a vital fact.  Coastal Conduit & Ditching, Inc. v.
Noram Energy Corp., 29 S.W.3d 282, 284 (Tex. App.CHouston [14th Dist.] 2000, no pet.). 








To recover on a medical malpractice
claim, a plaintiff must establish the following essential elements: (1) a
legally cognizable duty requiring the health care provider to conform to a
certain standard of care or conduct; (2) the applicable standard of care and a
breach of that standard; (3) injury; and (4) a reasonably close causal
connection between the breach of the standard and the injury suffered by the
plaintiff.  See Wheeler v. Yettie
Kersting Mem=l Hosp., 866 S.W.2d 32, 37 (Tex. App.CHouston [1st Dist.] 1993, no
writ).  Tenet moved for summary judgment
on the grounds that there was no evidence (a) of breach of the standard of
care; (b) that any such breach proximately caused the injuries and damages
claimed; and (c) of any element of gross negligence.  To defeat the motion, Norris was required to
produce more than a scintilla of probative evidence raising a genuine issue of
material fact on each of the challenged elements.  See Tex.
R. Civ. P. 166a(i) cmt.

Because the trial court granted Tenet=s no-evidence summary judgment motion
without specifying the grounds upon which it relied, we must affirm if any
ground is meritorious.  See Ins. Co.
of N. Am. v. Security Ins. Co., 790 S.W.2d 407, 410 (Tex. App.CHouston [1st Dist.] 1990, no
writ).  When a judgment rests upon more
than one ground, the party aggrieved by the judgment must assign error to each
ground or the judgment will be affirmed on the ground to which no complaint is
made.  Fields v. City of Tex. City,
864 S.W.2d 66, 68 (Tex. App.CHouston [14th Dist.] 1993, pet. denied).

After reviewing the record, we hold
that Norris failed to point out evidence raising a fact issue as to the
challenged elements of her claims.  In
her response to the motion for summary judgment, she argued only that the
motion should be denied and did not contend there was a genuine issue of material
fact as to any element of her causes of action. 
Norris globally stated facts, attaching approximately a hundred pages of
evidence consisting of three affidavits and many pages of medical records.  Norris also attempted to incorporate by
reference Aall admissions contained in the
pleadings of the parties.@  Norris never
explained how the evidence supported any of the challenged elements of her
causes of action. 








Norris=s response  is inadequate to satisfy her burden of proof
to defeat Tenet=s no-evidence summary judgment motion.  Norris was not required to marshal all her
evidence, but she was required to Apoint out evidence that raise[d] a
fact issue on the challenged elements.@ 
Tex. R. Civ. P. 166a(i)
cmt.; see also Brewer & Pritchard, P.C. v. Johnson, 7 S.W.3d 862,
869 (Tex. App.CHouston [1st Dist.] 1999), aff=d on other grounds, 73 S.W.3d 193 (Tex. 2002) (stating,
Aalthough it is true that appellant
globally stated facts to support its conclusions as it sees them and cited to
the record in support of those facts, it made no effort to connect any of the facts
to the challenged elements of the causes of action.  We believe Rule 166a(i) requires the
non-movant to make that connection.@). 
A trial court does not abuse its discretion when it does not consider
summary judgment proof to which a movant does not specifically direct the trial
court=s attention.  Guthrie v. Suiter, 934 S.W.2d 820, 826
(Tex. App.CHouston [1st Dist.] 1996, no writ).[19]

Accordingly, we affirm the trial
court=s summary judgment in favor of Tenet.

C.        Did the Trial Court Abuse its Discretion In Allegedly
Striking Norris=s Summary Judgment Evidence?

Norris next argues:

Although the record does not indicate the Trial Court
struck any of Norris=s summary judgment evidence. [sic]  If it did so, this was error.  Also[,] the Court was required to hold a Daubert
hearing prior to issuing any order striking Bullock=s expert testimony.








As Norris acknowledges, the record does not show that the
trial court struck any of Norris=s summary judgment evidence or
excluded Dr. Bullock=s testimony.  In order
to preserve a complaint for appellate review, party must obtain a ruling on the
complaint from the trial court or must object to the trial court=s refusal to rule.  Tex.
R. App. P. 33.1(a)(B).  Therefore,
we conclude this issue is waived. 

D.        Did the Trial Court Abuse Its Discretion in Denying Norris=s Motion for New Trial?

A trial court=s decision on a motion for new trial
is reviewed for an abuse of discretion.  Cliff
v. Huggins, 724 S.W.2d 778, 778 (Tex. 1987).  A trial court abuses its discretion if it
acts without reference to any guiding rules or principles.  Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241B42 (Tex. 1985).  In
order to find an abuse of discretion, the reviewing court must conclude that
the facts and circumstances of the case extinguish any discretion in the
matter.  Johnson v. Fourth Court of
Appeals, 700 S.W.2d 916, 918 (Tex. 1985). 

Norris argues the trial court abused
its discretion by failing to conduct the hearings discussed above and by
granting the defendants= motions for dismissal and summary judgment.  Because we have concluded the trial court=s challenged actions were not
erroneous, we conclude the trial court did not abuse its discretion by denying
the motion for new trial.  See County
of Dallas v. Wiland, 124 S.W.3d 390, 401 (Tex. App.CDallas 2003, pet. granted) (holding
that the trial court does not abuse its discretion by denying a motion for new
trial when the actions of the trial court challenged in the motion were not
erroneous).

IV. 
Conclusion








In sum, we hold the trial court did
not abuse its discretion by dismissing Norris=s claims against Morgan, Wheeler,
Davis, and Dr. Williams because Norris=s expert report did not represent a
good faith effort to satisfy the statutory requirements of the Medical
Liability and Insurance Improvement Act.[20]  We therefore affirm the trial court=s orders of dismissal of November 10
and December 15, 2003.  Finding no error
in the trial=s court grant of summary judgment in
Tenet=s favor, we affirm the trial court=s grant of summary judgment.  Finally, we affirm the trial court=s denial of Norris=s motion for new trial. 

 

 

/s/        Eva M. Guzman

Justice

 

Judgment rendered
and Memorandum Opinion filed May 30, 2006.

Panel consists of
Justices Fowler, Edelman, and Guzman.











[1]  Tenet is also
known as AHouston Northwest Memorial Medical Center@ and does business as AHouston
Northwest Partners, Ltd.@





[2]  Act of May 30,
1977, 65th Leg., R.S., ch. 817, ''
1.01B12.01, 1977 Tex. Gen. Laws 2039, 2039B64, repealed by Act of June 2, 2003, 78th Leg.,
R.S., ch. 204, ' 10.09, 2003 Tex. Gen. Laws 847, 884.





[3]  As discussed
below, the record before us contains no response, and although Dr. Williams
admits a response was filed, he contends that, like the response to the Nurses= motion to dismiss, it was untimely.





[4]  Act of May 30,
1977, 65th Leg., R.S., ch. 817, ' 1, sec.
13.01(d), 1995 Tex. Gen. Laws 985, 986, repealed by Act of June 2, 2003,
78th Leg., R.S., ch. 204, ' 10.09, 2003 Tex. Gen. Laws 847, 884.





[5]  Act of May 30,
1977, 65th Leg., R.S., ch. 817, ' 1, sec.
13.01(r)(6), 1995 Tex. Gen. Laws 985, 987, repealed by Act of June 2,
2003, 78th Leg., R.S., ch. 204, ' 10.09,
2003 Tex. Gen. Laws 847, 884.





[6]  Act of May 30,
1977, 65th Leg., R.S., ch. 817, ' 1, sec.
13.01(e)(3), 1995 Tex. Gen. Laws 985, 986, repealed by Act of June 2,
2003, 78th Leg., R.S., ch. 204, ' 10.09,
2003 Tex. Gen. Laws 847, 884.





[7]  Act of May 30,
1977, 65th Leg., R.S., ch. 817, ' 1, sec.
13.01(l), 1995 Tex. Gen. Laws 985, 987, repealed by Act of June 2, 2003,
78th Leg., R.S., ch. 204, ' 10.09, 2003 Tex. Gen. Laws 847, 884.  See also  Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 877 (Tex. 2001).





[8]  Act of May 30,
1977, 65th Leg., R.S., ch. 817, ' 1, sec.
13.01(e)(3), 1995 Tex. Gen. Laws 985, 986, repealed by Act of June 2,
2003, 78th Leg., R.S., ch. 204, ' 10.09,
2003 Tex. Gen. Laws 847, 884.





[9]  Norris has
consistently argued only that a Ahearing@ was required on the various motions, but she does not
contend that the motions were not Aheard@ by written submission.  We therefore assume that when Norris contends
that a Ahearing@ was
required, she refers to an oral hearing.





[10]  Act of May 30,
1977, 65th Leg., R.S., ch. 817, ' 1, sec.
13.01(g), 1995 Tex. Gen. Laws 985, 986, repealed by Act of June 2, 2003,
78th Leg., R.S., ch. 204, ' 10.09, 2003 Tex. Gen. Laws 847, 884.





[11]  Section 13.01
addresses expert reports generally, while section 14.01 addresses the
qualifications of expert witnesses in suits against physicians.





[12]  Act of May 30,
1977, 65th Leg., R.S., ch. 817, ' 1,
secs. 13.01(r)(6), 14.01(a) 1995 Tex. Gen. Laws 985, 988 (emphasis added), repealed
by Act of June 2, 2003, 78th Leg., R.S., ch. 204, ' 10.09, 2003 Tex. Gen. Laws 847, 884.





[13]  To the extent that a report states
what an ordinarily prudent physician would not have done, the report
addresses a breach of the standard of care rather than the applicable standard
of care.  See Strom v. Mem=l Herman Hosp. Sys., 110 S.W.3d 216, 223 (Tex. App.CHouston [1st Dist.] 2003, pet.
denied).





[14]  The order
granting Dr. Williams=s motion to dismiss contains a handwritten notation by
the trial court noting that there was no response to the motion to
dismiss.  The record before us contains
no response to Dr. Williams=s motion to dismiss and no motion for an extension of
time to amend the expert report as to any of the appellees.





[15]    See Act
of May 30, 1977, 65th Leg., R.S., ch. 817, ' 1, sec.
13.01(g), 1995 Tex. Gen. Laws 985, 986 (a claimant is not entitled to an
extension of time to amend an expert report unless she establishes that the
failure to file an adequate report was not intentional or the result of
conscious indifference but was the result of an accident or mistake), repealed
by Act of June 2, 2003, 78th Leg., R.S., ch. 204, ' 10.09, 2003 Tex. Gen. Laws 847, 884.





[16]  Id.





[17]  No such motion
is in the record, but Dr. Williams agrees that it was filed.





[18]  By granting the motion to dismiss,
the trial court implicitly denied the motion seeking an extension of time.  Walker v. Gutierrez, 111 S.W.3d 56, 60
n.1 (Tex. 2003).  Although we do not rule out the possibility
that the court did not consider Norris=s motion
for an extension of time, a trial court does not abuse its discretion if it
reaches the right result, even for the wrong reason.  Russ v. Titus Hosp. Dist., 128 S.W.3d 332, 340 (Tex. App.CTexarkana 2004, pet. denied).  A[W]hen a claimant files a report that omits one or
more of section 13.01(r)(6)=s required elements, a purportedly mistaken belief
that the report complied with the statute does not negate a finding of >intentional or conscious indifference.=@  Walker,
111 S.W.3d at 65.  As previously
discussed, Norris=s expert report failed to adequately address all the
elements required in section 13.01(r)(6). 
Therefore, the trial court would not have abused its discretion in
denying Norris=s motion for an extension of time on the grounds that
her expert report did not demonstrate a good faith effort to comply with
statutory requirements, but was instead the result of conscious indifference.





[19]  Moreover, even
if the trial court considered all of Norris=s
evidence without regard to whether it was cited in the response, it was not
required to supply the argument that the evidence raised a genuine issue of
material fact regarding breach of the standard of care, causation, or gross
negligence where Norris herself made no such argument.  Finally, even if the trial court supplied
Norris=s argument and located her evidence, the evidence
offered was insufficient to raise a genuine issue of material of fact as to any
of the challenged elements, for it contained the same defects as those found in
the expert report. 





[20]  Act of May 30,
1977, 65th Leg., R.S., ch. 817, ' 1,
sections 13.01 and 14.01, 1995 Tex. Gen. Laws 985, 988, repealed by Act
of June 2, 2003, 78th Leg., R.S., ch. 204, ' 10.09,
2003 Tex. Gen. Laws 847, 884.